In re REAL ESTATE TITLE AND SETTLEMENT SERVICES ANTITRUST LITIGATION.

Appeal of TUCSON UNIFIED SCHOOL DISTRICT and Phoenix Elementary School District No. 1.

No. 87–1815.

United States Court of Appeals, Third Circuit.

Argued June 8, 1988.

Decided March 7, 1989.

Rehearing and Rehearing In Banc Denied April 5, 1989.

Phillip H. Rudolph (argued), Gibson, Dunn & Crutcher, Washington, D.C., Robert E. Cooper, John A. Herfort, Stephen M. Crafton, Gibson, Dunn & Crutcher, Los Angeles, Cal., for appellee, Ticor Title Ins. Co.

John C. Christie, Jr., Patrick J. Roach, Lucinda O. McConathy, Rebecca C. Meriwether, Janet F. Satterthwaite, Bell, Boyd & Lloyd, Washington, D.C., for appellee, Chicago Title Ins. Co.

William T. Finley, Sheldon E. Hochberg, David F.B. Smith, Jeffrey R. Babbin, Pierson, Semmes and Finley, Washington, D.C., for appellee SAFECO Title Ins. Co.

Robert K. Corbin, Atty. Gen., Alison B. Swan, Chief Counsel, Gary P. Brady (ar-

gued), Asst. Atty. Gen., Antitrust Div., Phoenix, Ariz., for appellants.

John F. Graybeal, John J. Butler, Adams, McCullough & Beard, Raleigh, N.C., for appellee, Lawyers Title Ins. Corp.

B.J. Bradshaw, David M. Foster, Peter A. White, Andrea K. Sigman, Fulbright & Jaworski, Houston, Tex., for appellee, Stewart Title Ins. Co.

Frank D. Tatum, Jr., Paul J. Laveroni, Karen J. Kubin, William S. Freeman, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., Burton S. Levinson, Levinson & Lieberman, Inc., Beverly Hills, Cal., for appellee First American Title Ins. Co.

Peter Hearn, M. Duncan Grant, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees.

Before BECKER, STAPLETON and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal is from an order of the district court for the Eastern District of Pennsylvania enjoining an Arizona state court damages suit by appellants, two Arizona school boards, against appellee title insurance companies for price fixing in violation of Arizona state law. Appellants were members of the plaintiff class in a multi-district class action before the same district court involving federal antitrust claims against the same defendants. These claims were settled, and the settlement was approved by the district court on June 10, 1986.

Prior to the approval of the settlement, the State of Arizona moved to opt out of the class action on behalf of itself and its residents. This motion was denied by the district court. Arizona appealed to this Court, and, without opinion, we affirmed the district court's decision. The school boards, represented by the Arizona Attorney General, then brought the Arizona state court suit, seeking redress under state antitrust law, based on the same allegedly illegal activity by the same defendants. The title insurance companies asked the district court which heard the original class action to enjoin the Arizona state court suit. The district court found that the earlier class action settlement agreement precluded the state court action and therefore granted the requested injunction.

Noting the absence of minimum contacts with the Pennsylvania forum and their lack of consent to jurisdiction, appellants contend that the district court lacked the power to enjoin their action because it did not have personal jurisdiction over them. Appellants' contention presents a conceptually difficult question, particularly in view of the Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S.Ct. 2965, 2974–75, 86 L.Ed.2d 628 (1985). In *Shutts*, the Court held, with respect to damage class actions in which absent plaintiffs are allowed to opt out, that absent plaintiffs can be bound to a class action judgment even when they lack minimum contacts with the forum. We find this case to be distinguishable from *Shutts*, however. The school districts here have lost more than the absent plaintiffs lost in *Shutts*, and yet were given fewer procedural protections. The absent plaintiffs in *Shutts* were still able to challenge the adequacy of class representation in the forum of their choice, whereas the school boards in this case were forced under threat of injunction to address their adequacy claims to the distant Pennsylvania district court. Yet, while the absent plaintiffs in *Shutts* were given the opportunity to opt out of the class action, the school boards in this case were kept in the class action against their wishes.

Although the question is extremely close, we believe that in this situation it would violate due process for the district court to enjoin the school boards, which have not had minimum contacts with the forum nor consented to jurisdiction. We will thus reverse and remand the case with directions that the court vacate the injunction. In reaching this result, we also hold that the school boards did not consent to personal jurisdiction in the injunction proceeding by

reason of Arizona's appearance on their behalf in the initial class action to move to opt out, or its appeal from the denial of that motion. That is because we believe that a party does not consent to having the full power of the court levied against it by merely attempting to extricate itself from the court's jurisdiction through an opt out motion.

## I.

In January 1985, the Federal Trade Commission filed a complaint against six title insurance companies charging price fixing in thirteen states. Shortly thereafter, private parties in each affected state filed "tag-along" antitrust class action suits seeking injunctive relief and treble damages. These private antitrust suits were consolidated for pre-trial purposes, pursuant to 28 U.S.C. § 1407 (1982), and transferred to the district court for the Eastern District of Pennsylvania, as MDL 633.

In January 1986, the class representatives and the defendant title companies reached a settlement. The settlement was prompted in large part by the Supreme Court's decision in *Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985). That case held that the federal antitrust laws do not allow recovery if the alleged anti-competitive activity was expressly permitted and actually supervised by a state. *See* 471 U.S. at 59–60, 105 S.Ct at 1727–28. This expansion of the so-called "state action exception" to the antitrust laws adversely affected the plaintiff class' claims, because, in general, the states have heavily regulated the business of title insurance. *See* Dist.Ct.Op. at 34–36 (June 10, 1986) [1986 WL 6531].

The attorneys general of five states (Montana, New Jersey, Ohio, Pennsylvania, and Wisconsin) filed motions contending that the representative plaintiffs had not adequately represented them because the settlement did not provide significant monetary relief for their residents. *See id.* at 32. These five states argued that the class representatives ignored the fact that the degree of regulation of the title insurance industry varied from state to state, and thus that the strength of defendants' state action defense could vary from state to state. *See id.* at 17–19. The district court rejected the contentions of the five attorneys general because it found that they had not established that the state action defense would not be applicable to price fixing in their states, and because other defenses could block recovery in their states anyway. *See id.* at 37–40. Arizona did not participate in the objections to the adequacy of representation. Arizona did, however, move to opt out of the class on behalf of itself and its residents. *See id.* at 24.

On June 10, 1986, the district court approved the settlement. In paragraph 3 of the order, the court defined the plaintiff class as:

> All purchasers and insureds who purchased or received title insurance ... from [the defendants] ... with respect to real estate located in any of the thirteen Affected States during the period from January 1, 1981 to December 31, 1985 inclusive.

Dist. Ct. Order at 2 (June 10, 1986). Paragraph 8 defined the scope of the settlement in expansive terms:

> all claims that plaintiffs and members of the class may have as against defendants ... arising under the laws of the United States *or of any state* or other jurisdiction that are based on, relate to or arise out of any allegations [of price fixing] ... are *dismissed with prejudice.*

*Id.* at 6 (emphasis added). In paragraph 10 of its order, the district court reserved jurisdiction for purposes of enforcing its order. *See id.* at 7. In the opinion accompanying the order, the district court considered the fairness of the proposed class settlement and the adequacy of the class representation, and found the settlement to be fair and the representation to be adequate.

Prior to approving the settlement, the district court certified the class pursuant to Fed.R.Civ.P. 23(b)(1) and 23(b)(2), types of class actions that do not provide the right to opt out. In support of this ruling, the

court found that there was a serious risk that different courts would fashion different and incompatible means of restructuring the title insurance industry, and that the relief provided by the settlement was primarily injunctive. *See* Dist.Ct.Op. at 21–23. The court also denied Arizona's request to opt out on behalf of itself and its residents. The court found no reason to allow opt outs because "[t]he rights of the proposed class are adequately protected by the Rule 23 requirements that the class be adequately represented by the representative plaintiffs and by qualified counsel, that the class receive some adequate form of notice of the proposed settlement and that the court approve the settlement only if it is fair, adequate and reasonable." *Id.* at 25.

▇▇▇ Arizona appealed the district court's denial of its motion to opt out to this Court. Arizona argued that: (1) due process required that Arizona and its residents be afforded an opportunity to opt out before their damages claims could be extinguished; (2) the district court erred in failing to certify the action as a Fed.R.Civ.P. 23(b)(3) action, which requires that class members be given the opportunity to opt out; and (3) the class received inadequate notice of the settlement and its consequences. Although in its briefs and in oral argument Arizona discussed its assertion that it retained a valid state antitrust action for damages—the same argument it raises now in its challenge to the adequacy of representation—Arizona did not explicitly challenge the adequacy of the class representation in its prior appeal. This Court affirmed without opinion, thus blessing the

district court's denial of Arizona's motion to opt out and its determination that the notice was sufficient, but not stating whether its affirmance was based upon rejection of Arizona's due process claims or on some other ground. *In re Real Estate Title & Settlement Services Antitrust Litigation*, 815 F.2d 695 (3d Cir.1987) (mem. op.), *cert. denied*, —— U.S. ——, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1988).[1]

On November 3, 1987, while a petition for certiorari to the Supreme Court was pending on the issue of Arizona's right to opt out, the Arizona Attorney General filed a new complaint in Arizona state court seeking damages from the same title insurance companies named in MDL 633 on behalf of the school districts of Tucson and Phoenix. The complaint alleged that the title companies had conspired to fix prices in violation of Arizona's state antitrust laws.

In response, the defendant title insurance companies moved the district court in the Eastern District of Pennsylvania to enjoin the Arizona state court suit on the ground that it was prohibited by the class settlement agreement to which the school boards were bound. On November 30, 1987, the district court held a hearing, at which both the school boards and the title insurance companies were represented. Citing its power under an exception to the Anti–Injunction Act to enjoin a state proceeding if that proceeding interferes with the effectuation of a federal judgment, and noting that it had retained jurisdiction over the subject matter, the court enjoined the Arizona school boards from pursuing their state court suit on the ground that the

---

**1.** The parties dispute the effect of this Court's prior judgment order on the due process claims that appellants raise in this appeal. The title companies argue that since Arizona raised in the prior appeal essentially the same issue that it raises in this appeal—that it violates due process to foreclose the damage claims of Arizona residents—the Arizona school boards are, because of their close relation to the state of Arizona, barred from relitigating it by principles of issue preclusion. This position, however, is mistaken because issue preclusion only attaches if the basis of the first court's decision is clear. *See Restatement (Second) of Judgments* § 27(g) (1982). In this case, the first panel issued the

order without opinion. It is possible that that panel was persuaded by the named plaintiff's argument in opposition to Arizona's appeal, that the Court should not grant relief at that point because Arizona could more properly raise its due process claim on collateral attack. *See* Brief for Plaintiff/Appellees at 39–42, *In re Real Estate Title & Settlement Services Antitrust Litigation*, 815 F.2d 695 (3d Cir.1987). Unless the title companies can establish that resolution of any of Arizona's due process claims was essential to the first panel's affirmance of the denial of Arizona's motion to opt out, issue preclusion will not bar relitigation of those issues. *See Restatement (Second) of Judgments* § 27 (1982).

state suit was barred by its approval of the class settlement.

On December 24, 1987, the Arizona Attorney General filed the notice of appeal now before us. The appeal is based on the contentions that: (1) the district court did not have the power to enjoin the school boards, because the school boards did not have minimum contacts with the forum; (2) the district court was without power to determine the res judicata effect of its own judgment; (3) because of interests in comity and federalism, the district court should have abstained from deciding the res judicata issue; and (4) the district court erred in holding that the settlement of the federal court class action bars the Arizona state court suit.[2] Because we agree with the school boards' first contention—that the school districts could not be enjoined because they did not have minimum contacts with the forum—and will order the district court to vacate the injunction on that ground, we do not address the school boards' other three contentions.

**2.** The school boards' fourth contention is based on an argument that they were not adequately represented in the class action. The school boards submit that the representative plaintiffs sold them out by agreeing to a settlement that included no direct monetary relief. They contend that plaintiffs from Arizona would have been able to obtain monetary relief because the Arizona government did not exercise enough supervision over the title insurance industry to make the activity subject to the state action exception to the federal antitrust laws (thus making the reason for the settlement inapplicable to Arizona residents), and because Arizona plaintiffs would have also had a cause of action under Arizona state antitrust law, which does not have a state action exception.

**3.** As discussed below, this is a due process claim—the school boards argue that it would violate the Fifth Amendment's guarantee of due process for a federal court to enjoin them when they have not had minimum contacts with the forum. Although the Supreme Court has held that states are not persons within the meaning of the Fifth Amendment and thus are not entitled to due process protections, see *South Carolina v. Katzenbach*, 383 U.S. 301, 323–24, 86 S.Ct. 803, 815–16, 15 L.Ed.2d 769 (1966), we believe that the school boards are persons within the meaning of the Fifth Amendment due process clause. Although they may derive their funding from the state, we think that the school districts, whom the school boards represent, are more like private corporations—which can be

## II.

■ The Arizona school boards argue that, no matter what the preclusive effect of MDL 633, the district court had no power to issue an injunction against them because it possessed no personal jurisdiction over them. The school boards acknowledge that they were encompassed within the plaintiff class in MDL 633. And they do not at this time assert any personal jurisdiction obstacle to binding them to the settlement. Nevertheless, the school boards argue that the district court is without power to enter an injunction against absentee class members who have neither consented to jurisdiction nor have established minimum contacts with the forum.[3]

## A.

The Supreme Court has held that a court can bind an absent class member who had the ability to opt out to the judgment in a class action for damages, even if that party did not have minimum contacts with the

persons under the due process clause—than like states. See *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950) (holding that although corporations do not have a right to privacy that is coextensive with that of individuals, they "may and should" have a right against having unreasonable demands levied on them by the federal government in violation of the due process clause of the Fifth Amendment). Like corporations, and unlike states, the school districts are limited bodies which exist for a particular and circumscribed purpose. School boards are clearly "state actors," but that fact is immaterial; private corporations can also be state actors, see *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 716, 81 S.Ct. 856, 857, 6 L.Ed.2d 45 (1961) (holding that a private restaurant located in a public garage is a state actor), and, as explained above, they are accorded Fifth Amendment due process protection. We further note that in interpreting the Eleventh Amendment, the Supreme Court has held that school boards, despite their link to the state that created them, do not partake of the state's sovereign immunity. See *Mount Healthy School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–82, 97 S.Ct. 568, 572–74, 50 L.Ed.2d 471 (1977). Thus although school districts are related to the state, the Supreme Court has declared that they are not the alter ego of the state, see *id.*, and thus the Constitution can apply to them differently.

forum. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). In *Shutts,* more than 28,000 plaintiffs from all over the United States joined in a Kansas (state court) class action to recover interest on delayed royalty payments from Phillips Petroleum.[4] Phillips argued that Kansas' exercise of personal jurisdiction over the absentees violated the due process clause of the Fourteenth Amendment, because it did not meet the due process standard for personal jurisdiction required by *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (requiring minimum contacts for personal jurisdiction). Phillips asserted that because Kansas "had no prelitigation contact with many of the plaintiffs and leases involved ... Kansas ha[d] exceeded its jurisdictional reach and thereby violated the due process rights of the absent plaintiffs." 472 U.S. at 806, 105 S.Ct. at 2971.[5]

The Court rejected the defendant's challenge, and held that the *International Shoe* minimum contacts standard for personal jurisdiction as applied to *defendants* could not be automatically imported to govern the rights of absent *plaintiffs. See Shutts,* 472 U.S. at 808, 105 S.Ct. at 2972.

The Court stated that the protection required for an out-of-state defendant, "faced with the full powers of the forum state to render judgment *against* it," *id.,* need not necessarily be afforded to an absent plaintiff. A defendant must finance and participate in a suit, substantial burdens that require the protection of minimum contacts. The class action plaintiff, however, "is in quite a different posture" according to the Court. *Id.* Although an absent plaintiff does risk losing its cause of action, which is a form of property, "[t]he burdens placed by a State upon an absent class-action plaintiff are not of the same order or magnitude as those it places upon an absent defendant." *Id.*

*Shutts* stands for the proposition that a court can bind all members of a plaintiff "opt out" class to a judgment for damages even if the class members do not meet the traditional requirements of *in personam* jurisdiction "so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest." *Id.* The procedural protections of Fed.R.Civ.P. 23 replace the rigid rules of personal jurisdiction in this context and are all that is needed to meet the requirements of due process.[6]

---

**4.** Even though Kansas state law governed the class in *Shutts,* the Kansas law essentially tracked federal law and thus the holding in *Shutts* would apply equally to federal class actions. *See* 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1757 at 90 (2d ed. 1986); *see also* Miller & Crump, *Jurisdiction and Choice of Law in Multistate Class Actions after* Phillips Petroleum Co. v. Shutts, 96 Yale L.J. 1, 29–31 (1986).

**5.** The Court found that the defendant, Phillips, had standing to raise the claim that the due process rights of the absent plaintiffs were being violated based on Phillips' interest in ensuring that any favorable judgment bind all the absentees. *See Shutts,* 472 U.S. at 805, 105 S.Ct. at 2971.

**6.** Both *International Shoe* and *Shutts* arose in the state court systems; hence the Supreme Court enumerated the necessary procedural protections for defendants and absent class members under the due process clause of the Fourteenth Amendment. Here, in contrast, because we are interpreting the powers of a federal court, the question is whether the due process guarantees of the Fifth Amendment have been

satisfied. However, this Court has held that the "minimum contacts" standard articulated in *International Shoe* generally applies to federal courts in federal statutory cases as well as to state courts, *see Fraley v. Chesapeake & Ohio Ry. Co.,* 397 F.2d 1, 3 (3d Cir.1968) (holding that although the minimum contacts principle developed in diversity cases, it is nonetheless "generally regarded as applicable in cases grounded on a federal claim"), at least, it would seem, in cases in which Congress has not spoken to the extent of the reach of the federal court by, for example, providing for nationwide service of process. *Cf. Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 203–05 (E.D.Pa.1974) (a federal court's personal jurisdiction over a defendant being sued under a federal statute providing for nationwide service of process should be determined by reference to a fairness test, weighing the following factors: (1) the extent of defendant's contacts with the forum; (2) the inconvenience to a defendant of having to defend in a distant forum; (3) judicial economy; (4) the possible location of discovery proceedings; and (5) whether the activity in question is likely to have impact beyond the borders of defendant's residence or business and the extent of its impact).

The title companies submit that, although the injunction was issued *against* the Arizona school boards, the school boards more resemble plaintiffs than defendants because all that the school boards have lost is their cause of action. Thus, the companies argue that, under *Shutts*, the district court could enjoin the school boards even though the school boards did not have minimum contacts with Pennsylvania. Although we agree that the school boards seem more like plaintiffs than defendants, we still hold that the district court did not have the power to enjoin them, because, as we will explain, the school boards have lost more than the absent plaintiffs lost in *Shutts*, and they were accorded fewer procedural protections.

Like the absent plaintiffs in *Shutts*, the Arizona school boards risked losing, and may have lost, their cause of action for damages. *See* 472 U.S. at 807, 105 S.Ct. at 2972. However, as the Court in *Shutts* pointed out, the absent class members in *Shutts* were bound by the class action judgment only if they were adequately represented in the class action proceeding. Indeed, the Supreme Court had previously held that it would violate due process to bind an absent class member to a judgment from a proceeding in which the member was not adequately represented. *See Hansberry v. Lee*, 311 U.S. 32, 42–44, 61 S.Ct. 115, 118–19, 85 L.Ed. 22 (1940). Thus the class members in *Shutts* still possessed their right to attack the class action judgment collaterally, presumably in the forum of their choice, alleging that the representative plaintiff did not represent them adequately.

In the instant case, in contrast, once the appellees moved for an injunction in federal court, the Arizona school boards were forced to come from Arizona to Pennsylvania, a forum with which it is uncontested

they lack minimum contacts, and litigate their adequacy of representation claim as a defense in the injunction action there (on pain of losing their state claim entirely if the injunction against them were issued).[7] The fact that *Congress*, at least in some cases, may force a plaintiff to litigate its claim in a particular forum without violating due process, *see, e.g., Lockerty v. Phillips*, 319 U.S. 182, 187–89, 63 S.Ct. 1019, 1022–23, 87 L.Ed. 1339 (1943) (upholding right of Congress to direct all actions to restrain enforcement of price orders under the Emergency Price Control Act to one Emergency Court of Appeals in Washington, D.C.), is irrelevant to the question whether the school boards may have been deprived of due process by being forced by judicial fiat to litigate their adequacy of representation claim in Pennsylvania district court. The fact that the school boards were forced to litigate their adequacy claim in Pennsylvania was not based on any congressional determination.

Congress's power to direct a plaintiff to a particular federal forum stems from the fact that it is a matter of congressional discretion whether to create the federal courts at all. *Lockerty*, 319 U.S. at 187–89, 63 S.Ct. at 1022–23. Our interpretation of the due process clause of the Fifth Amendment in this context must be informed by the fact that the Constitution itself has given Congress the right to create the lower federal courts as it sees fit. *See* U.S. Const. Art. III, § 1. However, Congress has never evinced a desire as to whether a party lacking minimum contacts with the class action forum in a hybrid suit involving substantial damage claims should nonetheless be forced to bring its collateral challenge in that forum. In the instant case, there is no competing constitutional value (akin to Congress's power to create

---

7. Although the burden may not seem so great in this case, because the school boards have the backing and resources of the State of Arizona behind them and thus presumably can bear the expense of distant litigation, we cannot define due process based on the identity of a particular litigant. We recognize the force of the argument that class action procedures should be evaluated on a pragmatic basis, but pragmatism

must yield to constitutional considerations. While it is also true that constitutional adjudication does not take place in a vacuum, we believe that no principled line can be drawn, for example, at governmental bodies. There are many poor school boards who, when forced to litigate abroad, may not have the backing of the state attorney general.

the federal courts) to cabin our understanding of due process.

We further note in this regard that procedural due process does not protect litigants from any particular outcome; instead it protects litigants from arbitrary denials of rights. In this case, the school boards were haled across the country, not on the basis of a decision by Congress based on investigation and deliberation, but merely because of the fortuity that plaintiffs in Pennsylvania had similar claims and the Judicial Panel on Multi-district Litigation elected to consolidate all the MDL 633 cases there. Thus we must look carefully at the protections that the school boards were given in the class action proceeding, to assess whether it would violate due process to force them to litigate their adequacy as part of an injunction action in Pennsylvania district court.

In this regard, we stress that, although the original federal class action was certified under Fed.R.Civ.P. 23(b)(1) and 23(b)(2), it was a hybrid suit that involved the foreclosure of substantial damage claims, as well as the grant of injunctive relief. The Supreme Court has held that a cause of action for damages is a property right, and thus cannot be taken without due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 320, 70 S.Ct. 652, 660, 94 L.Ed. 865 (1950). We need not reach the issue of what procedural protections are required before a court can enjoin a suit by a party who was part of a class action for purely equitable relief, as opposed to the type of relief at issue in this case. *Cf.* 1 *Newberg on Class Actions* § 4.14 at 298–300 (1985) (even though certification under 23(b)(2) may be appropriate when damage and injunctive relief are both sought and are both important, courts should adopt safeguards when certifying important damage claims as part of a 23(b)(2) class action—for example by certifying the damage claims separately under 23(b)(3)). We are of course bound by this Court's earlier refusal to reverse the district court for failure to certify a (b)(3)

class. However, that decision does not foreclose us from fashioning a rule for a hybrid class with substantial damage claims certified under (b)(1) and (b)(2) that requires procedural protections before an absent class member can be enjoined from relitigation.[8]

Although, as discussed above, the consequences to the Arizona school boards of allowing the district court to adjudicate the injunction motion against them are more severe than were the consequences to the absent plaintiffs in *Shutts*, the procedural protections afforded the boards in the class action proceeding were fewer than those afforded the *Shutts* absent plaintiffs. In *Shutts*, the Court relied heavily on the fact that class members were given a chance to opt out of the damages class action. *See* 472 U.S. at 810–11, 105 S.Ct. at 2973–74. Two leading commentators have described *Shutts* as follows:

> One way to view *Shutts* is as a case about distant forum abuse. The right to opt out is essential to the Supreme Court's inference of consent, and that reasoning, in turn, is essential to the Court's validation of jurisdiction over members who have no affiliation with a distant forum.

Miller & Crump, *Multistate Class Actions after* Shutts, 96 Yale L.J. at 52. The Arizona school boards, on the other hand, were not afforded the opportunity to opt out of this hybrid class action. Arizona's motion to opt out on behalf of its residents was denied by the district court, and school boards were kept in the litigation against their wishes. One of the important procedural protections that persuaded the Court in *Shutts* that there was no due process violation in binding absent members to the class action judgment in *Shutts* was thus not available to Arizona in the instant case.

We need not reach the issue, left open by *Shutts*, *see* 472 U.S. at 811 n. 3, 105 S.Ct. at 2974 n. 3, whether an absent plaintiff can

---

**8.** *Neither do we address the due process requirements in a class action certified under Rule 23(b)(1) in which there is only a limited* common fund from which the plaintiffs can obtain relief.

be bound to the judgment in a hybrid (damage and injunctive) class action if it was not afforded the opportunity to opt out. The foregoing discussion does not decide that question because an absent plaintiff is not subject to the burdens of distant forum litigation when it is bound to a class action settlement, as long as it can challenge the adequacy of representation in the forum of its choice. The only issue we address is whether an absent class member can be *enjoined* from relitigation if the member does not have minimum contacts with the forum. And on that issue, we hold that, given that the absent member in this case loses more than the plaintiffs lost in *Shutts,* if the member has not been given the opportunity to opt out in a class action involving both important injunctive relief and damage claims, the member must either have minimum contacts with the forum or consent to jurisdiction in order to be enjoined by the district court that entertained the class action.[9] Because neither factor is present, the injunction must be set aside.

This does not mean that the settlement of the class action will be of no value to the title companies. The title companies can raise the defense that the Arizona school boards are bound to the settlement of MDL 633, and thus are precluded from proceeding with the state court suit, in the Arizona state court proceeding. The school boards can then raise their contention that they were not adequately represented in the class action proceeding, or raise other arguments as to why it would violate due process to bind them to the class action. *See supra* at 765 n. 2 (outlining Arizona's challenge to adequacy of representation); *see also* 3 *Newberg on Class Actions* § 16.23 at 342–43 (the two considerations to look to in deciding whether a party is

bound by the prior class action are whether the parties were members of the class, and "whether the initial proceeding complied with due process"). It will be for the Arizona court to determine the merits of the due process contentions. If that court finds that the school boards were accorded due process in the class action proceeding, then the state court suit will be prohibited by the terms of the settlement.

### B.

Appellees contend that imposing a minimum contacts requirement would wreak havoc on the class action system. They argue that the district court's power to render a judgment against class members would be largely illusory if the court could not enjoin all plaintiffs who seek to attack the judgment collaterally in other fora. They further argue that defendants would have little incentive to settle class actions under such a system because a defendant who successfully settled and hence legally barred further claims from absent class members could nevertheless expect to be sued in multiple other fora.

■ We do not agree with appellees' dire predictions. Ever since *Hansberry v. Lee* was decided in 1940, collateral attacks have been considered to be a necessary part of the class action scheme. Rather than threatening the vitality of the class action mechanism, the fact that some plaintiffs will be able to extricate themselves from class action judgments if subsequent courts find them to be inadequately represented is integral to the constitutionality of the class action procedure. *See Hansberry,* 311 U.S. at 45, 61 S.Ct. at 120 (stating that it would violate due process to bind an inadequately represented absent party to a prior judgment).

9. Appellees argue that the instant case is indistinguishable from *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1332 (5th Cir. 1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). In that case, absentee class members from South Carolina, dissatisfied with their settlement, sued defendants in South Carolina state court on state antitrust claims. The federal district court in Texas that had presided over the settlement enjoined the state

court action because such actions were precluded by the federal class settlement. The Court of Appeals upheld the injunction. Appellees argue that if we hold that the district court did not have the power to issue the injunction we would be creating a split between the circuits on the issue. We note, however, that the court in *Corrugated Container* never addressed the issue of the due process implications of lack of personal jurisdiction.

The result we reach is supported by important policy considerations bearing upon the efficiency of the class action device. Were we to adopt the appellees' position, we would be placing an extraordinary burden on courts which hear large, multistate class actions. There may be cases in which large numbers of absent plaintiffs wish to challenge the adequacy of representation. Under the title companies' rule, defendants would be able to funnel all of these challenges into the class action court by bringing injunction actions. This kind of consolidation would not necessarily be efficient, since it would not be sourced in a judge's belief that efficiency would be furthered by consolidation, but instead would arise as a product of the defendant's litigation strategy. As well as hearing the class action itself, the class action court would also become the repository of all of the potentially numerous and burdensome adequacy challenges.

In order to put the matter in perspective, it is important to emphasize that we are not reaching the question whether it is permissible to enjoin an absent plaintiff from relitigation if the absent plaintiff were afforded an opportunity to opt out of the class action. It may be that, in a hybrid class action that involves important injunctive and damage components, a defendant need only consent to a class certification that allows for opt outs in order to avoid due process challenges to the settlement in multiple fora, as long as the court approves that certification. If this is true, creating a minimum contacts requirement that applies to enjoining a plaintiff who was *not* allowed to opt out of a class action could make it more likely that, as part of the settlement of a hybrid class action, absent plaintiffs will be given an opportunity to opt out, but it is unlikely to discourage defendants from settling class actions in appropriate cases.

Moreover, as the Court explains in *Shutts*, it is partly up to the defendant to safeguard the interest of the absent plaintiffs. *See* 472 U.S. at 810, 105 S.Ct. at 2973. If the defendant wishes to achieve maximum preclusive effect, it is up to the defendant to ensure that the class is appro-priately certified, and the absent members are adequately represented. Far from wreaking havoc on the class action mechanism, we believe that our holding will foster results that most fairly balance the interests of absent class members and defendants alike.

### C.

■ The title companies contend alternatively that by appearing in the district court in Pennsylvania, Arizona consented to jurisdiction by the district court over the school boards. However, we agree with the school boards that Arizona's prior appearances before the district court and this court do not constitute consent to personal jurisdiction.

In its prior appearances, Arizona did not litigate the merits of the settlement agreement, nor did it litigate its adequacy of representation claim; in the district court it only moved to opt out, and before this Court it challenged the propriety of the denial of its motion to opt out, and further whether the notice given to plaintiff class members was adequate. In essence, in his prior appearance the Arizona Attorney General was arguing that it was improper for the district court to exercise its power over Arizona residents. Arizona analogizes its position in the first litigation to that of a defendant who comes to court to contest jurisdiction; such a party does not thereby consent to jurisdiction. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1344 at 523–24 (1969). We are aware of no prior cases allowing such a limited appearance for the purpose of a motion to opt out of a class action, and the question whether to approve such a limited appearance is difficult. But because we think that the interests of fairness and efficiency are better served if an absent plaintiff is not deemed to have consented to jurisdiction merely because it moved to opt out, we agree with Arizona's analogy.

We think that it would be bad policy to adopt appellees' position that whenever a litigant appears before a class action court, it waives any future jurisdictional objection

to the court issuing an injunction against it. Such a rule would be unfair because it could require absent plaintiffs to mount a potentially large-scale attack on adequacy in a distant forum (either in the initial proceeding or as a defense to an injunction action), when all they wanted was simply to request that they not be included in the distant litigation at all. And it would be inefficient because it would likely discourage litigants who wish to opt out from bringing opt-out motions in the district court. This would give the district court less information with which to determine whether the class certification is fair and proper, and thus may make it more likely that the class action judgment will be vulnerable on collateral attack. We therefore hold that a plaintiff does not consent to personal jurisdiction to have an injunction levied against it if it has merely appeared in the district court to make a motion to opt out.

Similarly, we do not believe that Arizona consented to jurisdiction on behalf of the school boards by appealing the denial of its motion to opt out and challenging on appeal the sufficiency of the notice to class members. Since we have held that absent plaintiffs do not consent to jurisdiction by moving to opt out, we think it would make little sense to say that parties consent by appealing the denial of such a motion.

We do not think that the fact that in the first appeal Arizona also challenged the sufficiency of notice alters this analysis. Of course, a party should be deemed to consent to personal jurisdiction if it actually litigates the adequacy of representation issue before the district court, or the underlying merits of the class action, because in such a case the party has shown a willingness to engage in extensive litigation in the forum. However, we do not see Arizona's participation as rising to this level. Arizona argued before this Court in its prior appeal that it had the right to opt out on behalf of all of its residents and that the notice sent to its residents was insufficient. Even if Arizona residents were accorded the right to opt out, that relief would not

amount to much if they did not have sufficient notice and thus could not determine if it was in their interest to opt out. As adequate notice is essential for the right to opt out to be meaningful, Arizona's challenge to the sufficiency of notice was part and parcel of its challenge to the denial of its motion to opt out on behalf of its citizens. We thus conclude that the prior appearances in the district court and here do not constitute consent to personal jurisdiction.

### III.

For the foregoing reasons, the district court's order enjoining the Arizona school boards from proceeding with their state antitrust action against the title insurance defendants in MDL 633 will be reversed and the case will be remanded with directions that the district court vacate the injunction. Appellees have moved for sanctions under Fed.R.App.P. 38, on the ground that this appeal is frivolous. In light of the fact that we are ruling in favor of appellants, the motion for sanctions will be denied.