Stuart **KORTEBEIN**, Atimo Candel, Ronald Peters, Thaddeus Pierce, Melvyn Romanoff, Fedor Bachman, William Baitinger, Charles Rhodes, Robert Babbin, Burton Eisenberg, Jeannette Page, David Rozen, Richard Hirschtritt, John Hoff, Martin Blumburt, et al., Appellants,

v.

AMERICAN MUTUAL LIFE INSURANCE COMPANY, now known as AmerUs Life Insurance Company, Appellee.

No. 03–00–00591–CV.

Court of Appeals of Texas, Austin.

May 10, 2001.

Tim Labadie, Austin, for appellant.

Douglas D. Dodds, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for appellee.

Before Justices KIDD, B.A. SMITH and PURYEAR.

BEA ANN SMITH, Justice.

Stuart Kortebein and forty-four other

Illinois residents [1] were among more than 130,000 plaintiffs in a nationwide class-action suit filed in Texas against American Mutual Life Insurance Company, now known as AmerUs Life Insurance Company (AmerUs), which resulted in a court-approved settlement. Kortebein did not opt out of the class action and participated in the settlement process; later, however, Kortebein sued AmerUs in Illinois asserting the same claims at issue in the Texas class action and claiming that the settlement was fraudulent. AmerUs asked the Texas district court to enforce its judgment by enjoining the Illinois residents from proceeding with the Illinois suit. Kortebein responded by challenging the district court's jurisdiction through a special appearance and arguing against AmerUs's request for the injunction. The district court denied Kortebein's special appearance and permanently enjoined the Illinois residents from proceeding with the suit against AmerUs in Illinois. Kortebein appeals that order, asserting that the district court erred in denying the special appearance because that court lacked personal jurisdiction over the Illinois residents, and that Kortebein is permitted by law to collaterally attack the class-action judgment in a forum of his choosing. We affirm the judgment of the district court.

**FACTS**

In 1995 Bruce and Wendy Cozad filed a class-action lawsuit in Travis County district court against AmerUs. The focus of the lawsuit, styled *Cozad v. American Mutual Life Insurance Company* (the *Cozad* class action), involved sales of "vanishing premium" whole life insurance policies by AmerUs.[2] The Cozads and Merle and Joann Baker, who later joined the Cozads as class representatives, sought to represent a nationwide class composed of certain holders of insurance policies issued by AmerUs or by Central Life Assurance Company. The Cozads, Bakers, and AmerUs agreed to a settlement and asked the district court for preliminary certification of the class and approval of the settlement agreement. The plaintiffs sought to have the class certified pursuant to Texas Rule of Civil Procedure 42(b)(4), which enables class members to request exclusion from the class. *See* Tex.R. Civ. P. 42(b)(4).

On June 10, 1997, the district court provisionally certified the class and ordered the class representatives to notify the class members of the settlement. The *Cozad* order contained a finding by the district court that the class representatives had produced evidence that they would fairly and adequately protect the interests of the class. The district court also stated that

1. For ease of reference, we will refer to appellants collectively as Kortebein, or when appropriate, as the Illinois residents.

2. A vanishing premium policy is one in which the holder pays premiums out-of-pocket for a limited period of time; thereafter, premiums are paid using the policy dividends and other policy values, and the policyowner's out-of-pocket premium obligations "vanish." The policy is distinguishable from policies where the holder pays premiums until he or she reaches 65 years of age or for the life of the policy. According to the class-action plaintiffs, AmerUs misrepresented that after a certain number of premium payments, the policies would be fully funded, with no further obligation to pay additional premiums; the policies would, effectively, "pay for themselves." The class-action plaintiffs alleged that, contrary to AmerUs's representations, policyholders were expected to make additional premium payments to keep the policies in effect. Plaintiffs maintained that AmerUs failed to disclose information that would have alerted them to the possibility that additional premiums would be required. Plaintiffs alleged breach of contract, negligence, fraud, negligent misrepresentation, unjust enrichment, violations of the Deceptive Trade Practices Act and Texas Insurance Code, breach of fiduciary duty, and constructive fraud.

the class representatives had produced evidence that showed that the settlement agreement was "negotiated at arm's length by experienced counsel; that substantial discovery and investigation have been conducted by Plaintiffs ... that the settlement agreement is fair, adequate and reasonable, confers substantial benefits on the Class Members, and is in the best interests of the class."

In addition, the *Cozad* order defined several procedures that would be available to class members, namely, the right to opt out or to object to certification and to the settlement. The court-approved notice included extensive information regarding this relief. The notice alerted class members that they had the right to opt out of the settlement class and that failure to do so would release and waive all present and future claims they might have against AmerUs. The notice also advised class members of the proposed settlement. Kortebein received this notice and did not opt out of the class.

On September 16, 1997, the district court signed a final judgment that both certified the class and approved the settlement agreement between the class and AmerUs. The district court entered findings that stated, "Plaintiffs ... have and will fairly and adequately protect and represent the interests of the class." The district court ordered AmerUs to mail a notice of approval of the settlement and opportunity for relief to all class members who had not opted out.

This second court-approved notice contained information regarding the terms of the settlement, which established a two-tiered system of basic relief and special relief. To qualify for special relief, any class member could submit a claim that an AmerUs agent or representative made certain material misrepresentations. The claim process required a claimant to complete a request and a proof of claim. A claim review team would review the file and assign each claim to a level of special relief or decide that the policy did not qualify for such relief. A claimant whose policy did not qualify for special relief could submit the claim to an independent arbiter, whose decision was binding and not subject to appeal "for any reason or to any forum." A class member who pursued a claim for special relief forfeited the right to seek basic relief. Class members who did not submit a policy to the claim process could obtain basic relief. In addition, the settlement provided that the Texas district court would have exclusive jurisdiction over and venue of all claims related to or arising from the settlement.

Kortebein elected to forego basic relief by submitting claims for special relief. The review team denied his claims. Kortebein then participated in the arbitration procedure; the independent arbiter also denied the claims, stating that they did not meet the criteria for special relief. Kortebein subsequently filed suit in the circuit court in Cook County, Illinois, alleging that the notice of the proposed settlement in the *Cozad* class action was misleading as to the particular requirements necessary to qualify for special relief. Kortebein requested that the Illinois court allow him to rescind his participation in the *Cozad* class action and be allowed to pursue his claims individually, or in the alternative, that he be awarded the special relief he applied for under the *Cozad* settlement agreement. He also requested compensatory and punitive damages against AmerUs.

Kortebein attempted to file a second-amended complaint to add an allegation that the class representatives in *Cozad* failed to adequately protect his interests; however, the Illinois court never granted leave to file that complaint and subsequently dismissed the action. Kortebein

attached the complaint to his brief in support of his special appearance filed in the Texas district court. In it, he argued that he relied on the fact that the class representatives had the duty to adequately represent the class members at all times. According to the complaint, Kortebein opted to pursue special relief in reliance both on the Cozads' duty and on the representations in the notice, thereby forfeiting his right to basic relief.

In response to Kortebein's suit in Illinois, AmerUs filed a motion to enforce the class-action judgment in the Texas district court and asked that court to enjoin Kortebein from taking any action relating to the subject matter of the final judgment in *Cozad,* except as provided in the judgment in the Texas court. AmerUs contended that Kortebein was a member of the *Cozad* class action, received notice of the proposed settlement, and elected not to opt out of the class. Further, Kortebein elected to submit claims for special relief, all of which were denied by the review team and by the independent arbiter. AmerUs asserted that Kortebein should have filed a bill of review with the district court, as he was alleging that the judgment was obtained by fraud.[3] AmerUs claimed that Kortebein instead made a collateral attack on the judgment despite having participated in the settlement whereby he released all claims against AmerUs, and despite having agreed to the exclusive jurisdiction of the Texas district court. Finally, AmerUs argued that Kortebein's lawsuit in Illinois constituted interference with the *Cozad* class-action judgment, thus making it necessary for the district court to exercise its inherent power to enforce its judgment by enjoining the suit in Illinois.

Kortebein, in response, filed a special appearance, objecting to the jurisdiction of the court on the grounds that he did not have sufficient minimum contacts with, nor had he consented to the jurisdiction, of the Texas courts. Further, he argued that the injunction should not be granted because he was not bound by the district court's final judgment in the class action. The district court rejected these claims, stating that it had inherent jurisdiction to enforce its judgment and Kortebein was directly interfering with that judgment, and enjoined him from proceeding in Illinois.

## DISCUSSION

Kortebein asserts four points of error that raise the following two issues on appeal: (1) whether the district court erred in denying the special appearance because it lacked jurisdiction over the Illinois residents and (2) whether the district court erred in enjoining suit in Illinois because Kortebein may collaterally attack a class-action judgment in a forum of his choosing.

### I. The Special Appearance

Kortebein asserts that certain due-process protections, including adequate representation, must be provided in class-action suits for a court to exercise jurisdiction over absent plaintiffs in order to bind them to the class-action judgment.[4] He contends that the absent plaintiffs in *Cozad,* including himself, were not adequately represented in the class action; therefore, the district court lacked jurisdiction to bind him to the class-action judgment. The district court erred, he maintains, in denying his special appearance in the hear-

---

3. *See Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985) (filing bill of review in district court is appropriate avenue to attack judgment as void when time for direct attack by appeal has elapsed).

4. The Illinois residents were among the absent plaintiffs in the *Cozad* class action.

ing on AmerUs's motion to enforce the class-action judgment.

■■■ When *in personam* jurisdiction is challenged, we review all the evidence for factual sufficiency. *Smith v. Lanier*, 998 S.W.2d 324, 330 (Tex.App.—Austin 1999, pet. denied). We may reverse the decision of the district court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Id.*

Kortebein relies on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), in which the United States Supreme Court explained that the Due Process Clause of the Fourteenth Amendment protects "persons" and not just "defendants," holding that minimal protections are required to bind absent plaintiffs to a judgment in a class action. *See id.* at 811, 105 S.Ct. 2965. The plaintiffs in *Phillips* were royalty owners who possessed rights to the leases from which Phillips Petroleum produced natural gas. *Id.* at 799, 105 S.Ct. 2965. They brought a nationwide class action in Kansas state court against Phillips, in which they sought to recover interest on royalty payments that Phillips had delayed paying. *Id.* The plaintiffs recovered a judgment that was affirmed by the Kansas Supreme Court. *Id.* Phillips argued to the United States Supreme Court, as it had to the state courts, that Kansas did not have personal jurisdiction because the absent class members lacked minimum contacts with Kansas as required by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Phillips*, 472 U.S. at 802, 105 S.Ct. 2965.

The Court, in *International Shoe*, set out the following test:

> If the defendant possessed certain minimum contacts with the State, so that it was "reasonable and just, according to our traditional conception of fair play and substantial justice" for a State to exercise personal jurisdiction, the State could force the defendant to defend himself in the forum, upon pain of default, and could bind him to a judgment.

*Id.* at 807, 105 S.Ct. 2965 (citing *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. 154). The *Phillips* Court emphasized that the purpose of the test is to avoid subjecting a *defendant* to the burden of "defending in a distant forum, unless [his] contacts with the forum make it just to force him to defend there." *Id.* Absent class-action *plaintiffs*, however, are subjected to fewer burdens;[5] therefore, the Due Process Clause "need not and does not afford [absent class-action plaintiffs] as much protection from state-court jurisdiction." *Id.* at 811, 105 S.Ct. 2965. The Court held that a state may exercise jurisdiction over absent class-action plaintiffs as long as minimal procedural due process protection is provided, even though the class-action plaintiffs may not possess minimum contacts with the forum. *Id.* In so holding, the Court noted that it had previously recognized the unique position of absent class-action plaintiffs in *Hansberry v. Lee*, 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940), in which the Court "explained that a 'class' or 'representative' suit was an exception to the rule that one could not be bound by judgment *in personam* unless

5. The *Phillips* Court explained that "[u]nlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Class-action plaintiffs need not hire counsel or appear in court. *Id.* "They

are almost never subject to counterclaims or cross-claims, or liability for fees or costs." *Id.* They are not subject to coercive or punitive remedies. *Id.* They are not bound to pay any damages, although a valid judgment may extinguish claims that were litigated in the class action. *Id.*

one was made fully a party in the traditional sense." *Phillips,* 472 U.S. at 808, 105 S.Ct. 2965. In *Hansberry,* the Court concluded that class-action plaintiffs would be bound by the judgment only if they were adequately represented and the prosecution of the litigation was within the common interest of the class. *Hansberry,* 311 U.S. at 41, 61 S.Ct. 115.

The *Phillips* Court defined the requisites of minimal due-process protection as "notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel." *Phillips,* 472 U.S. at 812, 105 S.Ct. 2965. The notice must be "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,'" and it must permit interested parties to opt out of the litigation. *Id.* Lastly, the class representative must adequately represent the absent class members' interests at all times. *Id.* In *Phillips,* the Court expressly pointed to the holdings of the Kansas trial court and supreme court that the class had received adequate representation in determining that due process was satisfied. *Id.* at 814, 105 S.Ct. 2965.

■ Kortebein claims that the requirement of adequate representation was not met in the underlying *Cozad* class action. He contends that the class representatives in *Cozad* did not adequately represent his interests because the class representatives agreed to a settlement that was "unfair and inconsiderate of [Kortebein's] interests." The record reveals, however, that all of the requisites identified by the United States Supreme Court were satisfied in the *Cozad* lawsuit. First, the district court found that the class representatives adequately represented the absent class members, initially in the preliminary order certifying the class and approving the set-

tlement, and subsequently, in the final judgment. Kortebein admits being apprised of these findings. Second, notice provided pursuant to the preliminary order gave interested parties the opportunity to either exclude themselves from the class or to object to certification. Interested parties were notified that failure to opt out of the settlement class released and waived all their present and future claims against AmerUs. Kortebein did not opt out. Third, the second notice outlining the procedures for settlement explained that pursuing special relief forfeited the right to seek basic relief. This notice also provided that the Texas district court had exclusive jurisdiction over all claims related to or arising from the settlement. With this knowledge, Kortebein sought special relief and participated in the arbitration procedures after the claim review team denied special relief. We hold that the evidence demonstrates that the minimal due process requirements mandated by *Phillips* were provided to Kortebein and the class-action judgment is binding on him. The district court's denial of Kortebein's special appearance is not against the great weight and preponderance of the evidence.

Kortebein asserts, however, that this case is similar to *In re Real Estate Title & Settlement Services Antitrust Litigation,* 869 F.2d 760 (3d Cir.1989), in which the Third Circuit held that absent class members had not consented to personal jurisdiction in Pennsylvania state court and, therefore, were not bound by the class-action judgment. *See id.* at 771. In *In re Real Estate,* two Arizona school boards moved to opt out of a class-action suit filed in Pennsylvania challenging price fixing by title insurance companies. The Pennsylvania district court refused to allow them to opt out. *Id.* at 762. As a result, the Third Circuit held that the school boards' partic-

ipation in the class action was against their wishes. *Id.* While the class action was pending in Pennsylvania, the Arizona attorney general filed suit in Arizona state court, asserting the same claims raised in the Pennsylvania class action. In response, the Pennsylvania state court granted the title insurance companies' motion to enjoin the suit in Arizona. Arizona's attorney general appealed that injunction to the Third Circuit, contending that the Pennsylvania court lacked jurisdiction over the Arizona school boards in the class action, and therefore could not enjoin the Arizona suit. The Third Circuit agreed, holding that "if the member has not been given the opportunity to opt out in a class action involving both important injunctive relief and damage claims, the member must either have minimum contacts with the forum or consent to jurisdiction." *Id.* at 769.

■ The present case is distinguishable from *In re Real Estate.*[6] Here, unlike the Arizona school boards, Kortebein was given the opportunity to opt out, but he chose not to exercise that option. Kortebein had notice that his failure to opt out would waive current and future claims he might have against AmerUs, that participation in the procedure seeking special relief waived any right to basic relief, and that any actions arising out of the settlement process were subject to the exclusive jurisdiction of the Texas court. Despite this notice, Kortebein participated in the class action and settlement process. Kortebein's participation in the settlement process and arbitration, knowing that such participation subjected him to exclusive jurisdiction in Texas, provided the necessary minimum contacts with this forum *and* consent to jurisdiction in Texas. *See Grimes v. Vitalink Communications Corp.,* 17 F.3d 1553, 1559–60 (3d Cir.1994) (holding that by surrendering shares in response to a tender offer with knowledge of his status as a plaintiff class member, plaintiff submitted to the jurisdiction of the court rendering the class-action judgment).

We find, moreover, that Kortebein was afforded the minimum due-process protections required to bind absent class members to a class-action judgment, and that the final judgment in the class action was binding on Kortebein. The Texas district court, therefore, had jurisdiction to grant the motion to enforce judgment and properly denied the special appearance. We overrule Kortebein's first three points of error.

## II. The Collateral Attack

Kortebein, again relying on *In re Real Estate,* asserts that he may collaterally attack the class-action judgment in a forum of his choice. In that case, the Third Circuit explained that "collateral attacks have been considered to be a necessary part of the class action scheme." *In re*

---

6. For the same reasons, the present case is distinguishable from *Brown v. Ticor Title Insurance Co.,* 982 F.2d 386 (9th Cir.1992), also cited by Kortebein. *Brown* involved the same class action as in *In re Real Estate,* in which the plaintiffs were denied the opportunity to opt out of the class. *Id.* at 392. In addition, *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir. 1973), is not relevant but for different reasons. In that case, the class-action judgment applied relief retrospectively to the named class representative, but prospectively as to all other class members. *Id.* at 76. The class representative's "failure to prosecute an appeal on behalf of the other members of his class rendered his representation of them inadequate." *Id.* at 75. Inadequate representation was apparent on the face of the class-action judgment in *Gonzales,* whereas here, the district court twice found the class members were adequately represented and no due-process deficiency is apparent on the face of the judgment.

*Real Estate,* 869 F.2d at 769. In fact, the federal court stated that "the fact that some plaintiffs will be able to extricate themselves from class action judgments if subsequent courts find them to be inadequately represented is integral to the constitutionality of the class action procedure." *Id.*

A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *Ranger Ins. Co. v. Rogers,* 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). A direct attack on a judgment, conversely, is an attempt to change that judgment in a proceeding brought for that specific purpose, such as an appeal or a bill of review. *Id.* The grounds upon which a collateral attack may be successful are that the court rendering judgment has (1) no jurisdiction of the person of a party, or his property, (2) no jurisdiction of the subject matter of the suit, (3) no jurisdiction to enter the particular judgment entered, or (4) no capacity to act as a court. *Id.* A judgment adjudicating the claims of a person over whom the court had no jurisdiction is void and thus, subject to collateral attack. *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex. 1985). The record must affirmatively show that a court's jurisdiction did not attach in a particular case. *Tucker v. Cole,* 215 S.W.2d 252, 255 (Tex.Civ.App.—Texarkana 1948, writ ref'd n.r.e.).

The collateral attack in *In re Real Estate* was appropriate because the Pennsylvania state court failed to afford the Arizona school boards the minimal protection necessary to bind absent class members: it forced the Arizona school boards to participate in the class action against their wishes. A collateral attack in the present case, however, is inappropriate because we have already held that the district court in *Cozad* afforded minimal protection to ab-

sent class members and thus had jurisdiction to issue a binding judgment on Kortebein. Consequently, that judgment may not be collaterally attacked in another forum. *See Browning,* 698 S.W.2d at 363.

Even if we agreed with Kortebein's suggestion that he may collaterally attack the judgment based solely on allegations of inadequate representation, the facts in the record direct us against such a course of action. *See Tucker,* 215 S.W.2d at 255. In general, the certifying court is charged with protecting the interests of absent class members. *Epstein v. MCA, Inc.,* 179 F.3d 641, 648 (9th Cir.1999) (citing *Phillips,* 472 U.S. at 809, 105 S.Ct. 2965) (on remand from the United States Supreme Court). Absent class members' due-process right to adequate representation is protected by the adoption of appropriate procedures by the certifying court and by appeal within the state system and by direct review in the United States Supreme Court. *Id.* Due process does not require collateral second-guessing of those determinations and that review. *Id.* In the instant case, the district court twice determined that the class representatives provided adequate representation to the absent class members. Kortebein did not appeal these findings nor did he file a bill of review. Instead, he voluntarily participated in the settlement process. The district court in *Cozad* took appropriate measures to ensure adequate representation and Kortebein's actions support this conclusion. In fact, when Kortebein initially sued in Illinois, he did not assert inadequate representation. This complaint did not arise until AmerUs asked the Texas district court to enforce its judgment.

Every court with jurisdiction to render a judgment has the inherent power to enforce its judgments. *Arndt v. Farris,* 633 S.W.2d 497, 499 (Tex.1982). In addition, a court may exercise this in-

herent power by any suitable method, *id.* at 499, which includes the issuance of a writ of injunction on proceeding in another court with a suit that would delay, obstruct, or interfere with the proper enforcement of a judgment. *Hunt Prod. Co. v. Burrage*, 104 S.W.2d 84, 87 (Tex.Civ. App.—Dallas 1937, writ dism'd w.o.j.). Because the district court in *Cozad* afforded the required minimal protection to absent class members, it acquired jurisdiction over Kortebein. The class-action judgment is binding on Kortebein and he may not collaterally attack that judgment elsewhere. The district court properly enjoined the suit in Illinois collaterally attacking the Texas class-action judgment. We overrule Kortebein's fourth point of error.

### CONCLUSION

We hold that the district court acquired jurisdiction over the Illinois class members and properly denied Kortebein's special appearance. Likewise the district court properly enforced the Texas class-action judgment by enjoining the suit in Illinois to collaterally attack that judgment. We therefore affirm the trial court's judgment in all regards.