10 F.3d 189
 62 USLW 2377
 Edward M. CARLOUGH; Pavlos Kekrides; Nafssica Kekrides,
his wife; Laverne Winbun, Executrix of the Estate of Joseph
E. Winbun, Deceased, and in her own right; Ambrose Vogt,
Jr.; Joanne Vogt, his wife; Carlos Raver; Dorothy M.
Raver, his wife; John A. Baumgartner; Anna Marie
Baumgartner, his wife; Timothy Murphy; Gay Murphy, his
wife; Ty T. Annas; Fred Angus Sylvester, on Behalf of
Themselves and all Others Similarly Situated.
Carl D. Roland; Gloria J. Roland, his wife; Walter L.
Mays, Sr.; Shirley G. Mays, his wife,
Plaintiffs-Intervenors,
v.
AMCHEM PRODUCTS, INC.; A.P. Green Industries, Inc.;
Armstrong World Industries, Inc.; Certainteed Corporation;
C.E. Thurston & Sons, Inc.; Dana Corporation; Ferodo
America, Inc.; Flexitallic, Inc.; GAF Building Materials
Corporation; I.U. North America, Inc.; Maremont
Corporation; National Gypsum Company; National Services
Industries, Inc.; NOSROC Corporation; Pfizer, Inc.;
Quigley Company, Inc.; Shook & Fletcher Insulation Company;
T & N, PLC; Union Carbide Chemicals and Plastics
Corporation; United States Gypsum Company, Third-Party Plaintiffs,
v.
ADMIRAL INSURANCE COMPANY; Affiliated FM Insurance Company;
AIU Insurance Company; Allianz Insurance Company; Allianz
Underwriters Insurance Company, Individually and as
Successor to Allianz Underwriters Inc.; Allstate Insurance
Company, as Successor to Northbrook Excess and Surplus
Insurance Company and Northbrook Insurance Company;
American Bankers Insurance Company of Florida; American
Centennial Insurance Company; American Home Assurance
Company; American Motorists Insurance Company; American
Re-Insurance Company; Appalachian Insurance Company of
Providence; Argonaut Insurance Company; Atlanta
International Insurance Company; Britamco, Limited; Caisse
Industrielle D'Assurance Mutuelle; C.E. Heath Compensation
and Liability Insurance Company, as Successor to
Employers' Surplus Lines Insurance Company; Centennial
Insurance Company; Central National Insurance Company of
Omaha; Chicago Insurance Company; City Insurance Company;
Colonia Versicherung Aktiengesellschaft; Columbia Casualty
Company; Commercial Union Insurance Company, as Successor
to Columbia Casualty Company, Employers Commercial Union
Insurance Company, Employers Commercial Union Insurance
Company of America, and Employers' Liability Assurance
Corporation Limited; Compagnie Europeenne D'Assurances
Industrielles S.A.; the Constitution State Insurance
Company; Continental Casualty Company; Employers Mutual
Casualty Company; Evanston Insurance Company; Executive re
Indemnity, Inc., as Successor to American Excess Insurance
Company; Federal Insurance Company; General Reinsurance
Corporation; Gibraltar Casualty Company; Government
Employees Insurance Company; Granite State Insurance
Company; Great American Insurance Company, Individually and
as Successor to Transport Indemnity Company; Highlands
Insurance Company; the Home Indemnity Company; the Home
Insurance Company; Houston General Insurance Company;
Hudson Insurance Company; INSCO, Limited; Insurance
Company of the State of Pennsylvania; Interstate Fire &
Casualty Company; Jefferson Insurance Company of New York;
Landmark Insurance Company; La Preservatrice Fonciere
Tiard, Individually and as Successor to La Fonciere
Assurances Transports Accidents and La Preservatrice; Le
Secours; Lexington Insurance Company; Lilloise
D'Assurances, as Successor to Lilloise D'Assurances Et De
Reassurances; London Guarantee and Accident Company of New
York; Lumbermens Mutual Casualty Company; Maryland
Casualty Company; Mead Reinsurance Corporation; Michigan
Mutual Insurance Company; Mutuelle Generale Francaise;
National American Insurance Company of California, as
Successor to the Stuyvesant Insurance Company; National
Union Fire Insurance Company of Pittsburgh, Pa.; Northbrook
Indemnity Company; North Star Reinsurance Corporation;
Northwestern National Insurance Company, Individually and as
Successor to Bellefonte Insurance Company; Old Republic
Insurance Company; Pennsylvania Manufacturers' Association
Insurance Company; the Protective National Insurance
Company of Omaha; Prudential Reinsurance Company; Puritan
Insurance Company, Individually and as Successor to the
Manhattan Fire and Marine Insurance Company; Ranger
Insurance Company; Republic Insurance Company; SAFECO
Insurance Company of America; Safety National Casualty
Corporation, as Successor to Safety Mutual Casualty
Corporation; St. Paul Fire and Marine Insurance Company,
Individually and as Successor to Birmingham Fire Insurance
Company; St. Paul Guardian Insurance Company; St. Paul
Surplus Lines Insurance Company; Stonewall Insurance
Company; Stonewall Surplus Lines Insurance Company; Sun
Alliance and London Insurance PLC; Tokio Marine & Fire
Insurance Company; the Travelers Indemnity Company; the
Travelers Insurance Company; Unigard Security Insurance
Company, as Successor to Unigard Mutual Insurance Company;
Union Des Assurances De Paris; Yosemite Insurance Company;
Certain Underwriters at Lloyds of London, (Including John
Does 1 to 200, Being Fictitious Names), and Certain London
Market Companies (Including John Does 201 to 400, Being
Fictitious Names), Third-Party Defendants,
Gregory Gore, William C. Ferrel, Michael P. Conley, and Lynn
A. Conley; their attorneys, agents and employees; and the
class they purport to represent in the action filed in
the Circuit Court of Monongalia County, West Virginia on
March 17, 1993, captioned Gore et al. v. Amchem Products,
Inc. et al., C.A. No. 93-C-195,* Appellants.
 No. 93-1482.
 United States Court of Appeals,
Third Circuit.
 Argued July 27, 1993.
Decided Dec. 1, 1993.
 
 Gene Locks, Jonathan W. Miller, Greitzer & Locks, Philadelphia, PA, Ronald L. Motley, Joseph Rice, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, L. Joel Chastain, Desa A. Ballard, Ness, Motley, Loadholt, Richardson & Poole, Barnwell, SC, for appellees Edward M. Carlough, Pavlos Kekrides, Nafssica Kekrides, Laverne Winbun, Ambrose Vogt, Jr., Joanne Vogt, Carlos Raver, Dorothy M. Raver, John A. Baumgartner, Anna Marie Baumgartner, Timothy Murphy, Gay Murphy, Ty T. Annas, Fred Angus Sylvester.
 John D. Aldock, (argued), Wendy S. White, David M. Battan, Shea & Gardner, Washington, DC, John G. Gaul, Center for Claims Resolution, Princeton, NY, for appellees Amchem Products, Inc., A.P. Green Ind., Inc., Armstrong World Industries, Inc., Certainteed Corp., CE Thurston & Sons, Dana Corp., Ferodo America, Inc., Flexitallic, Inc., GAF Bldg. Materials, I.U. North America, Inc., Maremont Corp., Nat. Gypsum Co., Nat. Ser. Ind., Inc., NOSROC Corp., Pfizer, Inc., Quigley Co., Inc., Shook & Fletcher Insulation Co., T & N PLC, Union Carbide Chemicals and Plastics Corp., U.S. Gypsum.
 Elit R. Felix, II, Margolis, Edelstein, Scherlis & Kraemer, Philadelphia, PA, for appellees Allianz Ins. Co., Allianz Underwriters, individually and as successor to Allianz Underwriters Inc., Argonaut Ins. Co., Chicago Insurance Co., Interstate Fire & Cas. Co.
 Joseph M. Oberlies, Connor & Weber, Philadelphia, PA, for appellee American Centennial Ins.
 Stephen F. Brock, Manta & Welge, Philadelphia, PA, for appellees American Re-Insurance Co., Exec. re Indem., as successor to American Excess Ins. Co.
 Lawrence M. Silverman, Silverman, Coopersmith & Frimmer, Philadelphia, PA, for appellees Central Nat. Ins. Co. of Omaha; Protective Nat. Ins. Co. of Omaha.
 John P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for appellees Columbia Cas. Co., Cont. Cas. Co.
 Jay M. Levin, Cozen & O'Connor, Philadelphia, PA, for appellee Commercial Union Ins. Co., as successor to Columbia Cas. Co., Employers Commercial Union Ins. Co., Employers Commercial Union Ins. Co. of America, and Employers' Liability Assur. Corp. Ltd.
 Daniel P. Lynch, Timby, Brown & Timby, Philadelphia, PA, for appellees Constitution State, Travelers Indem. Co., Travelers Ins. Co.
 David J. D'Aloia, Sean R. Kelly, Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, for appellees Gibraltar Cas. Co., Prudential Reins. Co.
 Rudolph Garcia, Saul, Ewing, Remick & Saul, Philadelphia, PA, for appellee Maryland Cas. Co.
 Lewis R. Olshin, Duane, Morris & Heckscher, Philadelphia, PA, for appellee Pa. Mfg. Assn. Ins. Co.
 Stephen P. Chawaga, Fitzpatrick & Tanker, Philadelphia, PA, Debra M. Patalkis, Chadbourne & Parke, New York City, for appellee Republic Ins. Co.
 Thomas W. Henderson (argued), Tybe A. Brett, Antonio D. Pyle, Henderson & Goldberg, Pittsburgh, PA (Scott S. Segal, Segal & Davis, Charleston, WV, of counsel), for appellants Gregory Gore, William C. Ferrel, Michael P. Conley, Lynn A. Conley, their attorneys, agents and employees, and the class they purport to represent in the action filed in the Circuit Court of Monongalia County, WV, on March 17, 1993, captioned Gore et al. v. Amchem Products, Inc., et al., C.A. No. 93-C-195.
 David L. Meade, Shinaberry, Meade & Venezia, L.C., William C. Field, James Humphreys, Stuart Calwell, Calwell & McCormick, Charleston, WV, for amicus curiae Shinaberry, Meade & Venezia, L.C., William C. Field, Law Offices of James Humphreys, and Calwell & McCormick.
 Before: MANSMANN, GREENBERG and LEWIS, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 The appellants, the "Gore plaintiffs", are absent members of a purported federal plaintiff class in an action brought pursuant to Federal Rule of Civil Procedure 23(b)(3) for asbestos-related tort damages in the United States District Court for the Eastern District of Pennsylvania. Simultaneously with the federal class action, but prior to the establishment of an opt out period in the federal suit, the Gore plaintiffs initiated a class action in the State Circuit Court of Monongalia County, West Virginia, against the same defendants named in the federal class action. The federal district court issued a preliminary injunction pursuant to the Anti-Injunction Act and the All-Writs Act, enjoining the Gore plaintiffs from prosecuting their state claims on the ground that the injunction was "necessary in aid" of the federal court's jurisdiction. The Gore plaintiffs appeal that injunction.
 
 
 2
 The Gore plaintiffs first asserted that the injunction was not binding on them because it purported to be effective outside of the jurisdictional reach of the federal district court. Essentially, the Gore plaintiffs claimed that unresolved jurisdictional challenges to the federal district court's subject matter jurisdiction in the action sub judice deprived the district court of authority to issue the injunction. The Gore plaintiffs further claimed, among other things, that the district court failed to observe the basic requisite of obtaining personal jurisdiction over the absent class members whom it purported to bind under the injunction. The injunction was issued prior to notice to the Gore plaintiffs of the commencement of the federal class action, prior to the establishment of the "opt out" period, without the Gore plaintiffs' consent to the jurisdiction of the federal court, and without some of the Gore plaintiffs having minimum contacts with the Eastern District of Pennsylvania. These claims have since been vitiated by a belated October 6, 1993 order of the district court finding that it indeed had subject matter jurisdiction over the Carlough action, and an even more belated October 27, 1993, order of the district court approving notice to be disseminated to the Carlough class. Nevertheless, we find that the Gore appeal continues to be viable because the question remains whether the injunction, which is still operative over the pending Gore action in the state court, is permitted under the "necessary in aid" exception to the interdicts of the Anti-Injunction Act, 28 U.S.C. Sec. 2283, and the All Writs Act, 28 U.S.C. Sec. 1651.
 
 
 3
 The appellees, numerous asbestos producers jointly represented by the Center For Claims Resolution (the "CCR") and named as defendants in both actions, assert that the district court may consider the merits of the proposed settlement agreement filed simultaneously with the federal class action complaint before the state court entertains the Gore plaintiffs' request for declaratory judgment, when such a declaration allegedly would threaten to undermine the district court's oversight of the settlement. Thus they argue that the injunction must continue to be maintained in aid of the district court's jurisdiction. Prior to the elimination of the Gore appellants' jurisdictional challenges, the CCR defendants had asserted that because the federal class action was going to afford the Gore plaintiffs an opportunity to "opt out," the Gore plaintiffs were required to await the establishment and commencement of the "opt out" period and to exercise that option before prosecuting their related state action. The future, but certain, opportunity to "opt out," they argued, dispelled any concerns of comity and federalism.
 
 
 4
 In light of the district court's resolution of the serious challenges to its jurisdiction, our holding will turn on the application of the "necessary in aid of jurisdiction" exception to the Anti-Injunction and All-Writs Acts. We will also address the issues vitiated by the district court's October 6 and October 27, 1993 opinions because of their currency in our developing class action jurisprudence.
 
 I.
 A.
 
 5
 On January 15, 1993, a class action complaint pursuant to Fed.R. of Civ.P. 23(b)(3), an answer and a stipulation of settlement were simultaneously filed in the United States District Court for the Eastern District of Pennsylvania. The complaint was brought on behalf of Edward M. Carlough and other named plaintiffs[1] representing the putative class consisting of
 
 
 6
 (a) All persons ... who have been exposed in the United States ..., either occupationally or through the occupational exposure of a spouse or household member, to asbestos or to asbestos-containing products for which one or more of the Defendants may bear legal liability and who, as of January 15, 1993, reside in the United States ..., and who have not, as of January 15, 1993, filed a lawsuit for asbestos-related personal injury, or damage, or death in any state or federal court against the Defendant(s)....
 
 
 7
 (b) All spouses, parents, children, and other relatives ... of the class members ... who have not, as of January 15, 1993, filed a lawsuit for the asbestos-related personal injury, or damage, or death of a class member ... in any state or federal court against the Defendant(s)....
 
 
 8
 The "Carlough plaintiffs" seek recovery for asbestos-related personal injury caused by the exposure of members of the putative class to the asbestos and asbestos-containing products of the defendants, who are miners, manufacturers, distributors, and suppliers of asbestos or asbestos-containing products, and their predecessors-in-interest, jointly represented by the Center For Claims Resolution.[2] Upon the joint motions of the named plaintiffs and the CCR members, the district court issued a conditional class certification order for the class defined in the complaint for purposes of settlement on January 29, 1993. The certification order further indicated that notice to absent class members would be given as to the pendency of the federal class action and of their rights to exclude themselves from the class.
 
 
 9
 On March 1, 1993, the district court issued a Rule to Show Cause and ordered a preliminary hearing on whether the action should be finally certified as a Rule 23(b)(3) class and whether the settlement was "fair, adequate and reasonable." The parties were directed to file with the Clerk memoranda of law and any other documents in support of their respective positions no later than March 19, 1993. Among the various motions and objections filed in response to the Rule to Show Cause were challenges to the district court's subject matter jurisdiction under Article III of the United States Constitution and under the federal diversity statute, 28 U.S.C. Sec. 1332, as well as challenges to the district court's personal jurisdiction over the parties.[3] Although these issues were resolved in the interim between the filing of the present appeal and the entering of our opinion and order in this matter, they were pending when the present appeal was taken.
 
 
 10
 On March 17, 1993, Gregory Gore, a resident of West Virginia, William Ferrel, a resident of Ohio, and Michael and Lynn Conley, residents of Pennsylvania, filed a related asbestos class action complaint, in the state court of West Virginia, under West Virginia law on behalf of themselves and as representatives of a putative class of plaintiffs similarly situated. Gore et al. v. Amchem Products, Inc., et al., C.A. No. 93-C-195 (Circuit Court of Monongalia County, West Virginia). This state class action, which names the same CCR defendants as in the Carlough federal class action, was commenced prior to the impending "opt out" period of the federal action and prior to the district court's determination of its subject matter and personal jurisdiction, and seeks as relief a declaration that the proposed Carlough settlement is unenforceable and not entitled to full faith and credit in the West Virginia courts and is not binding on members of the purported West Virginia class. It further seeks a declaration that the Gore plaintiffs are adequate representatives of the purported West Virginia class and are authorized to "opt out" of the purported federal class in Carlough on behalf of the entire West Virginia class. Finally, the Gore action seeks compensatory damages for each member of the West Virginia class for injury caused by the defendants' conduct in violation of West Virginia law, as well as punitive damages. The class of persons defined in the West Virginia suit parallels that defined in the federal Carlough suit, except that the West Virginia class is limited to persons whose claims are based on asbestos exposure occurring in West Virginia and is further limited to persons "who do not presently have a diagnosed medical condition related to asbestos."
 
 
 11
 On April 12, 1993, the defendant members of the CCR sought a temporary restraining order and preliminary injunction enjoining the West Virginia plaintiffs, their attorneys, agents and employees, and the class they purport to represent, from taking any steps in the further prosecution of their state claim or from pursuing similar "duplicative" litigation in any other forum. A telephonic hearing was held two days later concerning CCR's motion, and a temporary restraining order was granted the following day, April 15, valid until April 25, 1993. In issuing the temporary restraining order, the court found that
 
 
 12
 [T]he CCR Defendants may suffer irreparable harm in the prosecution of the Gore action as the relief prayed for is substantially preemptive in nature as it relates to the present [Carlough ] case. Further, the court finds CCR Defendants have established a reasonable probability of success on the merits of their request for an injunction and that a [sic] there is a substantial possibility of harm to a multitude of other potential class members, and that the public interest favors the issuance of this temporary restraining order.
 
 
 13
 Upon the expiration of the terms of the temporary restraining order, and upon a renewed motion for preliminary injunction, the district court extended the temporary restraining order through April 30, 1993 and scheduled a hearing on that date. After the hearing, the court further extended the temporary restraining order through May 5, 1993. When the extension expired, the district court granted a preliminary injunction, restraining and enjoining the Gore plaintiffs, their attorneys, agents and employees, and the class they purport to represent "from taking any steps in the prosecution of the [Gore ] action and from initiating similar litigation in any other forum." The Gore plaintiffs appealed this order. During the pendency of this appeal, the district court resolved the challenges to its subject matter jurisdiction, ruling in an October 6, 1993 opinion that it had Article III and 28 U.S.C. Sec. 1332 subject matter jurisdiction over the Carlough class action.[4] Shortly thereafter, on October 27, 1993, the district court approved the plan for dissemination and content of notice of the commencement of the federal action to all putative members of the Carlough plaintiff class.[5]
 
 B.
 
 14
 The district court grounded its authority for granting the preliminary injunction in the Anti-Injunction Act, 28 U.S.C. Sec. 2283 (1970), and the All-Writs Act, 28 U.S.C. Sec. 1651 (1988). The Anti-Injunction Act provides that:
 
 
 15
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 The All-Writs Act in part provides that:
 
 16
 The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 
 
 17
 In granting the injunction, the district court relied on the parallel "necessary in aid of jurisdiction" language of the two Acts and cited several cases in which federal courts have enjoined or upheld injunctions against absent class members who have initiated a duplicative state court suit, derived from the same matters pending in the federal district court. See, e.g., In re Asbestos School Litigation, 1991 WL 61156, 1991 U.S.Dist. LEXIS 5142 (E.D.Pa. April 16, 1991) (construing All-Writs Act and Anti-Injunction Act similarly, and holding that stay of state proceeding is "necessary in aid of jurisdiction" when parallel action would seriously impair federal court's flexibility and authority or opportunity to adjudicate as to the res ), aff'd mem., 950 F.2d 723 (3d Cir.1991); In re Baldwin- United Corp. (Single Premium Deferred Annuities Ins. Litigation), 770 F.2d 328 (2d Cir.1985) (injunction proper when multi-defendant opt out class action is so far advanced that it is equivalent to a res over which district court requires control, and potential for onslaught of duplicative state proceedings would seriously impair federal court's flexibility and authority); see also In re Corrugated Container Antitrust Litigation, 659 F.2d 1332 (5th Cir.1981), cert. denied, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982).
 
 
 18
 The district court rejected the Gore plaintiffs' reliance on our prior holdings in In re Real Estate Title and Settlement Services Antitrust Litigation, 869 F.2d 760 (3d Cir.) cert. denied, 493 U.S. 821, 110 S.Ct. 77, 107 L.Ed.2d 44 (1989) and in In re Glenn W. Turner Enterprises Litigation, 521 F.2d 775 (3d Cir.1975). The court distinguished our reversal of the injunction in In re Real Estate Title on the ground that it involved an absent class member who was denied the opportunity to opt out and who also had never consented to jurisdiction, whereas the Gore plaintiffs were going to be afforded an opportunity to opt out of the Carlough action. With regard to In re Glenn Turner, the district court's decision again turned on the state court plaintiffs' ability to opt out of the federal action. In In re Glenn Turner, the successful appeal from the injunction order was brought by the State Attorney General, who as a non-class member, was not eligible to opt out of the federal action. We thus permitted him to maintain a collection suit in state court, which was commenced subsequent to a restitution judgment in state court, but prior to class certification in the related federal action. We held, however, that the injunction as against class members, who could opt out, was valid as a directive facilitating the efficient management of the federal class action. By analogy, the district court reasoned that once the opt out period is commenced in the Carlough action, an unrealized but future certainty at the time the district court issued its order, the Gore plaintiffs would then be able to individually opt out of Carlough and file claims for asbestos-related injuries against the Carlough defendants in the forum of their choice, safeguarding policies of federalism and making the Gore action unnecessary. The court characterized the sole purpose of the Gore action as "preemptive" of the federal class action.
 
 
 19
 In addition, the district court rejected the Gore plaintiffs' contentions that the federal court lacked personal jurisdiction, finding that the Federal Rules of Civil Procedure allow federal courts to bind absent class members in opt out class actions, even without minimum contacts, without impinging federal due process protections, and concluding that the injunction was "necessary to protect [its] jurisdiction" under the All-Writs Act and the Anti-Injunction Act.[6]
 
 
 20
 Finally, the court held that issuance of the injunction enjoining absent class members was proper notwithstanding pending jurisdictional motions. Citing In re Asbestos School Litigation, 1991 WL 61156, 1991 U.S.Dist. LEXIS 5142 (E.D.Pa. April 16, 1991) (presumption against injunction overcome despite pending jurisdictional issues where time and expense incurred by parties and court on settlement is great and absent class member failed to opt out). Without any preliminary discussion of its jurisdiction, the district court summarily stated that "if it is finally determined that this Court lacks jurisdiction, the injunction over the Gore suit will be lifted." App. at 529.
 
 
 21
 The district court subsequently resolved the jurisdictional challenges and approved the plan for dissemination of notice to be implemented on November 1, 1993, and ending on December 27, 1993. The court set the deadline for opting out of the class for January 24, 1994, and set the final fairness hearing in the Carlough action for February 22, 1994.
 
 
 22
 We have jurisdiction to review a preliminary injunction granted by the district court. 28 U.S.C. Sec. 1292(a)(1). The Carlough action was brought in the federal district court pursuant to the diversity statute. 28 U.S.C. Sec. 1332. We will review whether the district court's issuance of the preliminary injunction was within the sound discretion of the court, or whether it was a clear error of law. Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S.Ct. 2561, 2567-68, 45 L.Ed.2d 648 (1975); Loretangeli v. Critelli, 853 F.2d 186, 193 (3d Cir.1988).
 
 II.
 
 23
 We discuss first the jurisdictional issues which we find resolved by the two orders of the district court entered subsequent both to the issuance of the preliminary injunction and to the appeal taken from that injunction. We note that neither the Anti-Injunction Act, 28 U.S.C. Sec. 2283 (1970), nor the All-Writs Act, 28 U.S.C. Sec. 1651 (1988), dispels the federal court's jurisdictional requisite or divests the West Virginia court of its jurisdiction to adjudicate the Gore action, but rather the judicial authority extended by the Acts is wholly derivative in nature. Thus the application of the Anti-Injunction and All-Writs Acts should have been preceded by the satisfaction of jurisdictional prerequisites. See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970) (exceptions to Sec. 2283 should not be enlarged by liberal statutory construction). Nevertheless, we will recognize the district court's jurisdiction over the Carlough action and the Gore plaintiffs in light of its belated October orders.
 
 
 24
 Turning to the question of personal jurisdiction over the Gore plaintiffs, we recognize that it is a fundament of personal jurisdiction in a court of law that a defendant be actually domiciled or present within the territory of the forum court, without which the court would lack authority to bind that defendant. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Though this standard has been elaborated, and to some extent relaxed, particularly to befit the practical realities of the modern corporate entity and to reflect the replacement of the capias ad respondendum with personal service of process and modern forms of notice, it remains beyond cavil, as a general principle of jurisdictional authority, that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Id. (citations omitted). International Shoe arose in the state court system and the opinion expressed the due process guarantees of the Fourteenth Amendment; nonetheless, the minimum contacts requirement for personal jurisdiction applies to federal courts having subject matter jurisdiction on the basis of diversity of citizenship as well as cases brought on the basis of a federal claim. See In re Real Estate Title, 869 F.2d 760, 766 n. 6 (3d Cir.1989). Thus, it would offend the Fifth Amendment's guarantee of due process for a federal court to enjoin an absentee class member whose minimum contacts with the forum have not been established or, in lieu of minimum contacts, who has not consented to the court's jurisdiction, explicitly or inferentially.
 
 
 25
 In Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Supreme Court held that a court may bind an absent plaintiff class member to a class action damages judgment, despite the absentee's lack of minimum contacts with the forum, without abrogating minimal due process protection. 472 U.S. 797 at 811-12, 105 S.Ct. at 2974-75. The absentee plaintiff class member's due process rights would be satisfied if the plaintiff received reasonable notice, an opportunity to be heard and to meaningfully partake in the litigation, adequate representation, and "at a minimum ... an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Id. at 812, 105 S.Ct. at 2975. The Court justified the relaxation of the minimum contacts standard for personal jurisdiction as applied to absent plaintiffs by adverting to the relatively less onerous burdens placed by a state on an absent plaintiff class member as compared to those placed on an absent defendant. Id. at 808, 105 S.Ct. at 2973. A plaintiff class member who is afforded an opportunity to opt out, but who fails to exercise that option, may be deemed to have consented to jurisdiction. Id. at 812, 105 S.Ct. at 2975. As we noted in In re Real Estate Title, "[t]he procedural protections of Fed.R.Civ.P. 23 replace the rigid rules of personal jurisdiction in this context and are all that is needed to meet the requirements of due process." 869 F.2d 760, 766 (3d Cir.1989) (footnote omitted.)
 
 
 26
 In re Real Estate Title afforded us an opportunity to examine Shutts and to reaffirm the critical importance of the right to opt out in drawing any inference of consent to jurisdiction by absent plaintiff class members who otherwise would have no affiliation with the forum. We held that
 
 
 27
 [I]f the member has not been given the opportunity to opt out in a class action involving both important injunctive relief and damage claims, the member must either have minimum contacts with the forum or consent to jurisdiction in order to be enjoined by the district court that entertained the class action.
 
 
 28
 In re Real Estate Title, 869 F.2d at 769. Because neither the opportunity to opt out (or any indicia of consent) nor minimum contacts were present, we held that the federal district court was not authorized to enjoin a state court damages suit brought by two state school boards, the absent plaintiffs in the related federal multi-district class action, against title insurance companies, the defendants in both the federal and state actions, for violations of state antitrust law.[7] We confirmed that the traditional minimum contacts requirement applies to enjoining a plaintiff who has not been allowed to opt out of a class action. See also Compagnie des Bauxites de Guinea v. Insurance Company of North America, 651 F.2d 877, 880 (3d Cir.1981) (district court must have personal jurisdiction over party before it can enjoin actions) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112, 89 S.Ct. 1562, 1570, 23 L.Ed.2d 129 (1969)), aff'd sub nom Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinea, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).
 
 
 29
 As in In re Real Estate Title, the present case was distinguishable from Shutts during the interim when the absent class plaintiffs had not yet been notified and the opt out period had not yet been established in that the Gore plaintiffs had not yet been afforded the opportunity to opt out--an essential component of personal jurisdiction in lieu of the more traditional minimum contacts. The lack of personal jurisdiction over the Gore plaintiffs at that time is further evidenced in the record by clear indications that the Gore plaintiffs did not consent to the district court's jurisdiction. Not only did the Gore complaint expressly indicate the desire to be excluded from the federal action, but the Gore plaintiffs had not received notice of the Carlough proceedings prior to the motions to enjoin their state court actions. Cf. Battle v. Liberty Nat. Life Ins. Co., 877 F.2d 877, 883 (11th Cir.1989) (after Fed.R.Civ.P. 23(b)(3) notice had been effected on about 90% of class, district court properly issued injunctive order pursuant to Anti-Injunction Act). Although an inference of consent might have been drawn from silence or inaction after notice and the running of the opt out period, Shutts, 472 U.S. at 806-14, 105 S.Ct. at 2971-75, we find no precedent for assuming consent prior to notice and the commencement of the opt out period.[8] Thus, with neither express or inferred consent, nor minimum contacts, and prior to notice and the commencement of the opt out period, the district court did not have personal jurisdiction over the Gore plaintiffs and did not have authority to bind their actions when it issued the injunction. In short, the district court's pre-notice, pre-opt out period injunction was premature.
 
 
 30
 We do not believe that the mere promise, even certain eventuality, that the opportunity to opt out of the class will be offered to absent class plaintiffs satisfies the requirements of due process as defined by Shutts. There the Supreme Court specifically required that "an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." 472 U.S. at 812, 105 S.Ct. at 2974. Because of this emphasis by the Supreme Court on the receipt of the opt out forms, we reject the district court's implication here that the opt out requirement is satisfied in all cases where a class action will provide for the opportunity to opt out.
 
 
 31
 Thus, prior to notice and the opt out period, and absent minimum contacts with the Pennsylvania forum or consent to its jurisdiction, a federal injunction enjoining state action would violate due process. See In re Real Estate Title, 869 F.2d at 762. Strictly and narrowly enforcing the requisite opportunity to opt out for Rule 23 class plaintiffs before exerting personal jurisdiction comports with the overall class action mechanism and is derived from policy considerations bearing upon comity and federalism. Here the district court's premature issuance of the injunction threatened to compromise these principles. Nevertheless, once the district court approved the dissemination of notice and commenced the opt out period pursuant to its October 27, 1993 order, the jurisdictional problem was resolved. Thus, despite the district court's initial jurisdictional overreach, we will recognize its legitimate exercise of personal jurisdiction over the Gore appellants.
 
 III.
 
 32
 As with personal jurisdiction, the district court was obliged to ascertain, at least in a preliminary fashion, its own subject matter jurisdiction over the Carlough case before issuing an injunction in aid of that jurisdiction. Without this preliminary determination, the court should not have adverted to the Anti-Injunction Act or the All-Writs Act for authority to issue the injunction, especially in light of the fact that serious challenges to the court's Article III jurisdiction in Carlough were pending at time the court enjoined the Gore plaintiffs. Cf. Atlantic Coast Line, 398 U.S. at 295, 90 S.Ct. at 1747 (stating that "if the District Court does have jurisdiction," it may issue an injunction which is "necessary in aid of " that jurisdiction); In re Baldwin-United Corp., 770 F.2d at 335 ("When a federal court has jurisdiction over its case in chief, ... the All-Writs Act grants it ancillary jurisdiction to issue writs 'necessary or appropriate in aid of ' that jurisdiction"). The district court's opinion in support of its preliminary injunction did not indicate any such initial determination with regard to its subject matter jurisdiction, although the court thoroughly addressed the matter in its October 6, 1993 opinion.
 
 
 33
 We appreciate that an initial jurisdictional inquiry may indicate the need for extensive discovery, which, if undertaken prior to examining whether an injunction is necessary in aid of the court's jurisdiction, could hinder the efficient resolution of the case. A court may need to act promptly to safeguard its jurisdiction in the face of interference by parallel actions brought in a state court. In cases in which complex jurisdictional issues have been raised, the initial jurisdictional determination need not await extensive discovery, but may be based on the information reasonably and immediately available to the court. Cf. Industrial Electronics Corp. v. Cline, 330 F.2d 480, 482 (3d Cir.1964) (where jurisdictional issues raised in context of Rule 65 motion for preliminary injunction, movant must establish "reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits"); see Schell v. Food Machinery Corp., 87 F.2d 385, 387 (5th Cir.) ("A federal court may sometimes enjoin proceedings in a state court to protect its own jurisdiction lawfully acquired, but may not interfere even temporarily when it has none"), cert. denied, 300 U.S. 679, 57 S.Ct. 670, 81 L.Ed. 883 (1937). Although the district court did not make this initial jurisdictional determination, in light of its in-depth resolution of the matter in its October 6, 1993 opinion, we will recognize the court's subject matter jurisdiction over the Carlough action.
 
 IV.
 
 34
 Having determined that the district court satisfactorily, albeit belatedly, ascertained its jurisdictional authority, we turn now to the remaining question of the propriety of the court's application of the "necessary in aid" exception to the Anti-Injunction and All-Writs Acts.[9]
 
 
 35
 In In re Glenn Turner, 521 F.2d 775 (3d Cir.1975), we examined the "necessary in aid of the court's jurisdiction" exception to the Anti-Injunction Act. There the Attorney General instituted a collection suit in a state court following a money judgment and just days after the federal district court had certified the federal class action. Nevertheless, execution upon the state court judgment was effectively enjoined by order of the district court, purportedly by authority of the Anti-Injunction Act. In reversing the injunction of the district court, we reiterated that for the "necessary in aid of jurisdiction" exception to apply, " 'it is not enough that the requested injunction is related to that jurisdiction, but it must be "necessary in aid of " that jurisdiction.' " In re Glenn Turner, 521 F.2d at 780 (citing Atlantic Coast Line R.R. Co., 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970)). We noted that the exception authorizing injunctions necessary in aid of the court's jurisdiction applies only " 'to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.' " Id. Finally, we held that Fed.R.Civ.P. 23(b)(3) does not prohibit state proceedings when an action for the same cause is pending in federal court. In recognition of the independence and equivalent stature of the state and federal courts, we held that actions derived from the same cause against the same defendants may be maintained simultaneously in federal and state court. The effect of a judgment in one would be determined by the principle of res judicata. In re Glenn Turner, 521 F.2d at 780-81 (citing Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co., 328 F.2d 791 (3d Cir.1964)). Moreover, we held that the state citizens on whose behalf judgment was entered in state court "were not proper members of the [federal] class by virtue of the state judgment, rendering unnecessary their opting out before the district court finally determined the class membership." In re Glenn Turner, 521 F.2d at 781.
 
 
 36
 Thus, simultaneous federal and state adjudications of the same in personam cause of action do not of themselves trigger the necessary in aid exception, and the letter and spirit of the Anti-Injunction Act and All-Writs Act counsel a restrictive application of that exception. The Supreme Court has cautioned, in deference to principles of federalism, that
 
 
 37
 [a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of Sec. 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.
 
 
 38
 Atlantic Coast Line R.R. Co., 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970).
 
 
 39
 Despite the deference paid to the independence of the state courts and principles of comity, there are instances in which courts of appeals have determined that state actions must be enjoined to allow the federal court to proceed ably with pending matters. We find the standard enunciated in these cases in which the courts have upheld issuance of "necessary in aid of" injunctions persuasive and relevant here.
 
 
 40
 In In re Asbestos School Litigation, 1991 WL 61156, 1991 U.S.Dist. LEXIS 5142 (E.D.Pa. April 16, 1991), aff'd mem., 950 F.2d 723 (3d Cir.1991), we affirmed without an opinion, a district court's issuance of an injunction prohibiting absent class members from pursuing a state court asbestos property damage suit which duplicated a federal school property class action. There, after an absent member in the federal class action failed to opt out, it filed a state court suit against a group of defendants seeking relief corresponding to that in the action pending in federal court. Several of the defendants requested that maintenance of the state court suit be enjoined. Adverting to the complexity of the federal class action and its impending settlement, the court granted the injunction on the ground that the state action so impeded the prosecution of the federal action as to warrant resort to the "necessary in aid" exception.
 
 
 41
 Our sister circuits have also identified impending and finalized settlements in federal actions as justifying "necessary in aid of jurisdiction" injunctions of duplicative state actions. In In re Baldwin United Corp., 770 F.2d 328 (2d Cir.1985), a consolidated MDL proceeding, over 100 lawsuits were brought against 26 defendants by holders of securities. After years of negotiations, many defendants agreed to a settlement and signed stipulations to that effect. Prior to the entry of final judgment approving the settlements, the attorneys general of several states made known their intent to commence enforcement suits in their state courts seeking restitution and other damages against some of the defendants. The district court enjoined the imminent state proceedings under the necessary in aid exception to the All-Writs Act, explaining:
 
 
 42
 that the existence of actions in the state court would jeopardize its ability to rule on the settlements, would substantially increase the cost of litigation, would create a risk of conflicting results, and would prevent the plaintiffs from benefitting from any settlement already negotiated or from reaching a new and improved settlement in federal court.
 
 
 43
 Id. at 333.
 
 
 44
 The Court of Appeals for the Second Circuit affirmed, adding that,
 
 
 45
 [t]he existence of multiple and harassing actions by the states could only serve to frustrate the district court's efforts to craft a settlement in the multi-district litigation before it.
 
 
 46
 * * * * * *
 
 
 47
 Under the circumstances we conclude that the injunction ... was ... unquestionably "necessary or appropriate in aid of" the federal court's jurisdiction.
 
 
 48
 Id. at 337-38. See also In re Corrugated Container Antitrust Litigation, 659 F.2d 1332 (5th Cir.1981), cert. denied, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982) (state court proceeding halted to protect federal jurisdiction over imminent settlement); Battle v. Liberty National Life Ins., 877 F.2d 877, 882 (11th Cir.1989) (collateral state proceedings enjoined under necessary in aid exception); James v. Bellotti, 733 F.2d 989, 994 (1st Cir.1984) (provisionally improved settlement may justify protective injunction against state court suits).
 
 
 49
 Here the prospect of settlement was indeed imminent, as in other cases in which federal courts have issued injunctions. Additionally, as the district court found, the nature of the Gore suit provides further justification for the injunction. The Gore plaintiffs are not requesting relief strictly parallel to that sought in the federal forum. Rather than requesting damages for exposure to asbestos, the stated purpose of the Gore suit is to challenge the propriety of the federal class action, which the district court characterized as a preemptive strike against the viability of the federal suit, and to obtain rulings from the West Virginia state court regarding the West Virginia class members' right to opt out of the federal action. In addition, Carlough is an opt out federal class action posing no impediment to the Gore plaintiffs' individual exercise of their opt out right and option to commence their own respective lawsuits in the forum of their choice. Cf. In re Real Estate Title, 869 F.2d 760, 769 (injunction not proper where no opportunity to opt out); In re Glenn Turner, 521 F.2d 775, 778-79 (injunction precluded for non-class members but not precluded as against members of an opt out class where necessary to orderly and efficient federal class management). Thus, we agree with the district court findings that judicial precedent as well as the preemptive cast of the Gore suit and the recent establishment of the opt out period overcome the reluctant disposition of the courts to issue a necessary in aid injunction.
 
 
 50
 We hold that given the establishment of an opt out period and the Gore plaintiffs' ability to opt out, it is within the sound discretion of the district court to enjoin their action in state court. The Gore plaintiffs individually are at liberty to pursue litigation of their asbestos-related injury claims in the forum of their choice. This ability abrogates any argument of the Gore plaintiffs that their West Virginia rights are not adequately addressed by the federal court settlement. Injunction of that portion of the Gore suit seeking a ruling from the West Virginia court permitting a mass opting out of all West Virginia plaintiffs is also necessary in aid of the district court's jurisdiction. At this mature phase of the settlement proceedings and after years of pre-trial negotiation, a mass opting out of West Virginia plaintiffs clearly would be disruptive to the district court's ongoing settlement management and would jeopardize the settlement's fruition. In addition, a mass opting out presents a likelihood that the members of the West Virginia class will be confused as to their membership status in the dueling lawsuits. All members of the Gore class are only now receiving notice of the federal suit. A declaration by the West Virginia court at this time that all West Virginia members of the federal class are now in the West Virginia suit (and we make no comment as to the legal authority of the West Virginia court to so rule) could cause havoc.
 
 
 51
 We note also that litigating the propriety of the federal settlement in West Virginia would subject the CCR defendants to unnecessarily duplicative and costly efforts when a fairness hearing has already been scheduled in the district court. Although there is no prohibition against related causes of action being adjudicated in both state and federal forums, two actions here would unduly burden the defendants.
 
 
 52
 We find it difficult to imagine a more detrimental effect upon the district court's ability to effectuate the settlement of this complex and far-reaching matter than would occur if the West Virginia state court was permitted to make a determination regarding the validity of the federal settlement. Challenges that the settlement violates West Virginia law can be presented to the district court, and those plaintiffs wishing to preserve their claims for West Virginia adjudication may opt out of the federal class.
 
 
 53
 Given the concerns of the district court to finalize the settlement and given the time invested in reaching that goal, we find that the district court did not abuse its discretion in determining that the injunction should issue. We will, therefore, affirm the order of the district court granting preliminary relief in favor of the defendants.
 
 V.
 
 54
 The order of the district court of May 6, 1993 enjoining the Gore plaintiffs, their attorneys, agents and employees, and the class they purport to represent from taking any further steps in the prosecution of their claims in the Circuit Court of Monongalia County, West Virginia, or from initiating similar litigation in any other forum, is affirmed.
 
 
 
 *
 Pursuant to F.R.A.P.Rule 12(a)
 
 
 [1]
 The named plaintiffs are Edward M. Carlough; Pavlos Kekrides and Nafssica Kekrides; Laverne Winbun; Ambrose Vogt, Jr. and Joanne Vogt; Karlos Raver and Dorothy M. Raver; John A. Baumgartner and Anna Marie Baumgartner; Timothy Murphy and Gay Murphy; Ty T. Annas; Fred Angus Sylvester
 
 
 [2]
 The CCR defendants are Amchem Products, Inc.; A.P. Green Industries, Inc.; Armstrong World Industries, Inc.; Certainteed Corporation; C.E. Thurston & Sons, Inc.; Dana Corporation; Ferodo America, Inc.; Flexitallic, Inc.; GAF Building Materials Corporation; I.U. Northamerica, Inc.; Maremont Corporation; National Gypsum Company; National Services Industries, Inc.; NOSROC Corporation; Pfizer, Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Company; T & N, plc; Union Carbide Chemicals and Plastics and United States Gypsum Company
 
 
 [3]
 Among the pleadings filed in response to the Rule to Show Cause were:
 (1) Motion to dismiss claims of plaintiffs Carlough, Vogt, Murphy, and Annas for lack of subject matter jurisdiction and for failure to state a claim, or in the alternative, motion for partial decertification filed by plaintiffs represented by Baron & Budd, C.A. No. 93-0215, United States District Court for the Eastern District of Pennsylvania, March 16, 1993.
 (2) Motion to dismiss for lack of jurisdiction under the doctrine of feigned and collusive cases filed by plaintiffs represented by Baron & Budd, C.A. No. 93-0215, United States District Court for the Eastern District of Pennsylvania, March 16, 1993.
 (3) Motion to dismiss for lack of case or controversy filed by plaintiffs represented by Henderson & Goldberg, C.A. No. 93-CV-0215, United States District Court for the Eastern District of Pennsylvania, March 17, 1993.
 (4) Objections to class certification and approval of the stipulation of settlement filed by plaintiffs represented by Henderson & Goldberg, C.A. No. 93-CV-0215, United States District Court for the Eastern District of Pennsylvania, March 16, 1993.
 
 
 [4]
 In an opinion of more than 50 pages, the district court dispelled the various challenges to its Article III jurisdiction, its statutory diversity jurisdiction, allegations of collusion between the named parties, as well as the allegation that the case is moot. In a nutshell, the district court held the following:
 
 
 [1]
 While many members of the Carlough class are "exposure-only" plaintiffs, with no measurable or diagnosable manifestation of asbestos related injury, the potential for asbestos-related illness to manifest in "exposure-only" plaintiffs is enough to satisfy the "injury in fact" requirement of Article III standing. Thus, the court has subject matter jurisdiction regardless of the legal significance of the "injury in fact" sustained by the exposure-only plaintiffs
 
 
 [2]
 When punitive damages are included, the amount in controversy for exposure-only plaintiffs is not clearly less than the statutory requisite of section 1332 diversity jurisdiction. Hence, diversity jurisdiction is not destroyed. Furthermore, a settlement for less than the $50,000 statutory requisite does not destroy diversity jurisdiction
 
 
 [3]
 Collusion or feigned adversity may not be inferred to exist between the parties merely from the fact that the complaint and settlement were filed simultaneously, inasmuch as pre-filing settlement negotiations do not evidence "friendly" law suits and the Carlough settlement was, at any rate, a contingent proposal between adverse parties. The fact that the CCR defendants agreed to pay class counsel fees is also no indication of collusion, but is rather standard. Thus, the "case or controversy" requirement of Article III is met
 
 
 [4]
 The Carlough case is not mooted by the proposed settlement because the proposed settlement, is, of course, contingent on the court's approval
 
 
 [5]
 On October 29, 1993, 1993 WL 441720, the district court entered a memorandum and order denying the motions of certain objectors for certification of various orders for interlocutory appeal of the January 29, 1993 order conditionally certifying the Carlough class pursuant to 28 U.S.C. Sec. 1292(b) and for stay of the district court's order of October 27, 1993 approving the content of notice and the dissemination scheme. The objectors then filed an emergency motion to stay the October 27, 1993 order, as well as a petition for mandamus directing vacatur of the October 6, 1993 order (subject matter jurisdiction) and the October 27, 1993 order (notice). The emergency motion to stay was denied, and the objectors filed a motion for leave to withdraw the petition for writ of mandamus on November 1, 1993
 
 
 [6]
 The Gore plaintiffs had further argued that the CCR defendants did not meet the prerequisites for equitable relief under Fed.R.Civ.P. 65. The court dismissed that claim, concluding that the "prerequisites for equitable relief under Rule 65 do not apply to the preliminary injunction requested in this case." Although the Gore plaintiffs reassert in this appeal their argument that Fed.R.Civ.P. 65 applies to the preliminary injunction in question, we decide this case on other grounds and hence do not reach this issue
 
 
 [7]
 We further noted in In re Real Estate Title that, despite the federal court's inability to enjoin the state action, the settlement of the federal class action would still have value to the title companies. We noted that the settlement afforded the title companies the defense that the school boards were precluded from proceeding with the state court on the ground that they were bound to the settlement. In turn, we noted that the school boards could claim inadequate representation in the federal class action, or perhaps raise other due process claims which would invalidate the settlement as to themselves. If the school boards could demonstrate either that they were not members of the federal class, or that the federal proceeding did not comply with due process guarantees, then the state court action would not be prohibited by the terms of the federal class action settlement
 
 
 [8]
 It might have been persuasive, as we conjectured in In re Real Estate Title, that "in a hybrid class action that involves important injunctive and damage components, a defendant need only consent to a class certification that allows for opt outs in order to avoid due process challenges to the settlement in multiple fora, as long as the court approves that certification." In re Real Estate Title, 869 F.2d at 770. But facing the issue squarely in the present case, we find no reason to relax the jurisdictional requisite to a binding in personam judgment beyond Shutts and other precedent, which allow an inference of consent to jurisdiction where an absent plaintiff class member is notified and fails to exercise the opt out prerogative
 
 
 [9]
 The All-Writs Act, 28 U.S.C. Sec. 1651, provides:
 (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 The Anti-Injunction Act, 28 U.S.C. Sec. 2283, states that:
 A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 The two statutes act in concert to permit issuance of an injunction. While the Anti-Injunction Act does not provide positive authority for issuance of injunctions, it describes those situations where injunctions are not permitted. The All-Writs Act, by contrast, grants the federal courts the authority to issue injunctions where necessary in aid of their jurisdiction. The parallel "necessary in aid of jurisdiction" language is construed similarly in both the All-Writs Act and the Anti-Injunction Act. See In re Asbestos School Litigation, 1991 WL 61156, 1991 U.S.Dist. LEXIS 5142 (E.D.Pa. April 16, 1991), aff'd 'mem., 950 F.2d 723 (3d Cir.1991).