NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2871
_____

PHILIP GOTTHELF, on behalf of himself and all others similarly situated; NATHAN
GUEDALIA, on behalf of himself and all others similarly situated,
Appellants

v.

TOYOTA MOTOR SALES, U.S.A., INC., a California corporation authorized to do
business in New Jersey; TOYOTA MOTOR NORTH AMERICA, INC., a California
corporation authorized to do  business in New York; TOYOTA MOTOR
CORPORATION, a Japanese corporation
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF NEW JERSEY
(D.C. Civ. Action No. 2-10-cv-04429)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit LAR 34.1(a)
March 18, 2013
_____

Before: SMITH, GREENAWAY, JR., and VAN ANTWERPEN, *Circuit Judges*.

(Opinion Filed: May 21, 2013)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Philip Gotthelf ("Gotthelf") and Nathan Guedalia ("Guedalia"), (collectively,

"Appellants"),[1] appeal the District Court's Order dismissing their Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  For the reasons that follow, we will affirm the District Court's Order.

## I.    BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

This case is related to two other class action suits, *Collado v. Toyota Motor Sales, U.S.A., Inc.* (No. 10-cv-03113) (the "*Collado* action"), and *Fixler v. Toyota Motor Sales, U.S.A., Inc.* (No. 10-cv-03124) (the "*Fixler* action").  The *Collado* and *Fixler* actions were consolidated (the "*Collado-Fixler* action") in the Central District of California (the "California District Court"), and were settled on behalf of a nationwide class on October 17, 2011.[2]

On August 30, 2010, approximately sixteen months after the *Collado* action was filed, Appellants filed their putative class action Complaint (the "*Gotthelf* action") in the District of New Jersey, on behalf of themselves and "[a]ll persons in the United States

---

[1] Appellants also purport to bring their claims on behalf of a putative class of all others similarly situated.

[2] The *Collado* action was filed in the Central District of California on May 1, 2009, and three months later the District Court sua sponte ordered that the action be transferred to the Southern District of New York because Collado was a New York resident.  On February 16, 2010, the *Fixler* action was filed in the Southern District of New York.  The District Court for the Southern District of New York, on April 19, 2010, ordered both actions transferred to the Central District of California, where the cases were consolidated.

who own or lease, or who have owned or leased, model years [2006-2009] Toyota Prius motor vehicles equipped with an optional factory-installed HID Headlamp System ('Nationwide Class')."[3]  (App. 100.)

### A.    Factual Allegations in the *Gotthelf* Action

The allegations in the Complaint center around an alleged defect in the Toyota Prius's optional, factory-installed, high-intensity discharge ("HID") headlamp system, which caused the HID headlamp bulbs to stop working without warning ("Unexpected Extinguishment").  This is the same defect that was at issue in the *Collado-Fixler* action. Appellants claim that the Unexpected Extinguishment was unreasonably dangerous because one or both headlamps could extinguish while driving.

On May 6, 2009, the National Highway Transportation Safety Association ("NHTSA") notified Toyota that it had opened an investigation into HID headlamp failures in the 2006 and 2007 model year Toyota Prius, based on 338 reports it had received of such failures.  Appellants include in their Complaint several of the customer reports filed with the NHTSA, the earliest of which is dated July 1, 2007.  Appellants also allege that the NHTSA investigation uncovered approximately 2,200 consumer complaints regarding failed HID headlamps, some filed with the NHTSA and some with Toyota, and that additionally, as of September 2009, Toyota had received about 27,600

---

[3] Appellants originally included owners of 2010 Toyota Priuses in their Complaint.  The District Court determined that the 2010 Toyota Prius did not come equipped with HID headlights, and Appellants did not object to the District Court's exclusion of 2010 vehicle owners from the putative class.

3

warranty claims on the issue. The NHTSA investigation found that in most cases of Unexpected Extinguishment, one bulb would extinguish at a time, and that toggling the headlamp switch on and off would temporarily restore lighting, thereby making it feasible to get the vehicle to a repair facility. In August 2009, the NHTSA closed its investigation, concluding that "a safety defect trend [had] not been identified at [that] time." (App. 566, 803.)

In December 2009, Toyota initiated a Customer Support Program, offering to fully reimburse owners of 2006-2009 Priuses who had replaced the headlight electronic control unit ("ECU"), and to partially reimburse customers who had replaced one or more of the HID headlamp bulbs. It sent the Customer Support letter to customers on December 28, 2009. In the letter, Toyota stated that the HID headlamp failure occurred toward the end of the HID bulb's useful life, and explained that replacing the HID bulbs was "sufficient to curtail the intermittent operation." (App. 263.) The letter also gave customers several suggestions on how to extend the life of the HID bulbs. Customers wishing to participate in the Support Program were required to submit claims no later than March 31, 2010.

Gotthelf purchased a new Toyota Prius on April 28, 2006, and Guedalia leased a new Toyota Prius on August 30, 2006. Each paid more for the optional HID headlamp system. The HID headlamps were covered under Toyota's 36-month or 36,000-mile warranty.

One of Gotthelf's HID headlamps first experienced Unexpected Extinguishment in October 2009, after his Prius had been driven 49,907 miles and was no longer under

4

warranty. When Gotthelf replaced the driver's side HID headlamp bulb, the Toyota representative informed Gotthelf that Toyota was aware of the problem with the HID headlamps. In November 2009, the passenger side headlamp began to experience Unexpected Extinguishment, but as of the filing of the Complaint, Gotthelf had not replaced it.

Unexpected Extinguishment first occurred in Guedalia's passenger side HID headlamp in July 2009, after his Prius had been driven 59,021 miles and was no longer under warranty. In August 2009, Guedalia replaced one HID headlamp bulb, and in February 2010, he replaced the other. Both Gotthelf and Guedalia received Toyota's December 28, 2009 Customer Support letter.

In the Complaint, Appellants argue that Toyota had knowledge of the HID headlamp defect and concealed the defect from its customers. Appellants allege that Toyota marketed the more expensive HID headlamps as superior to standard halogen bulbs, claiming that the HID headlamps provide better visibility, use less power, and last longer than halogen bulbs. They claim that Toyota had knowledge of the defect in the HID headlamps as early as 2005 and failed to inform customers of the alleged latent defect. Appellants provide no factual support for this assertion, and the earliest customer complaint they include in their Complaint is dated July 1, 2007. They also claim that Toyota has concealed the defect and that the December 28, 2009 Customer Support letter was misleading, in that it failed to acknowledge any latent product defect and only partially reimbursed some customers. Appellants bring claims under New Jersey law for

violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:81 et seq., common law fraud, breach of express warranty, and breach of the implied covenant of good faith and fair dealing.

**B.      Procedural History of the *Collado-Fixler* and *Gotthelf* Actions**

When Appellants filed their Complaint, the *Collado-Fixler* action, which sought to represent the same nationwide class, was already pending in the Central District of California, and the parties were already engaged in settlement discussions.

On September 17, 2010, Appellants filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML"), seeking to have all the "Unexpected Extinguishment" cases, including *Collado-Fixler*, transferred to the District of New Jersey for consolidated and coordinated pretrial proceedings. The Panel denied the motion on November 30, 2010, because the Panel found that "the parties in the Central District of California actions are on the cusp of a settlement," and "[t]here are more suitable mechanisms in place by which class members can object to or opt out of a class settlement." (App. 668.) Appellants also filed a motion with the California District Court to intervene in the *Collado-Fixler* action, which was denied.

On December 30, 2010, the parties in the *Collado-Fixler* action reached a formal settlement agreement (the "Settlement Agreement"), which purported to settle all claims related to the HID headlamps for owners of model years 2006-2009 Toyota Priuses. On January 10, 2011, the California District Court approved the *Collado-Fixler* plaintiffs'

6

motion for certification of a settlement class under Fed. R. Civ. P. 23(b)(3).[4] The court

ordered that the class be given notice of the pendency of the action and the terms of the

proposed settlement. Class members were given the opportunity to opt out of the

Settlement Agreement and to file objections. Gotthelf opted out of the class settlement.

Guedalia did not opt out, but filed an objection to the Settlement Agreement, claiming

that the settlement was premature and insufficient to address the class members' claims.

The California District Court held a fairness hearing on October 17, 2011, and

approved the Settlement Agreement, finding it "fair, adequate, and reasonable" under

Fed. R. Civ. P 23(e). (App. 421-23.) The District Court considered the arguments raised

by the objectors (including Guedalia), and found that they raised "no significant concerns

that would preclude approval of the settlement." (App. 423.) Guedalia received and

cashed a check from the settlement, and did not file an appeal of Settlement Agreement in

the Ninth Circuit.[5]

Following final approval of the Settlement Agreement, Toyota moved to dismiss

the claims in the *Gotthelf* action. The District Court granted the motion on May 3, 2012,

dismissing Guedalia's and the putative class's claims on res judicata grounds, and

---

[4] In its Order approving a settlement class, the California District Court also considered, as is required, the factors set forth in Fed. R. Civ. P. 23(a). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).

[5] In July 2011, an appeal of the *Collado-Fixler* action was filed in the Ninth Circuit, but only with respect to the California District Court's award of attorney's fees.

dismissing Gotthelf's claims for failure to state a claim.[6]  Appellants filed a timely notice

of appeal.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1332(d).  We have

jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over a district court's

grant of a motion to dismiss.  *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d

Cir. 2013).

## III.    ANALYSIS

### A.    Res Judicata and Due Process

Guedalia argues that the District Court erred by dismissing his and the putative

class's claims as barred by res judicata, and that he is entitled to collaterally attack the

Settlement Agreement.  He claims that he and the putative class are not bound by the

Settlement Agreement because they were denied due process in the resolution of the

*Collado-Fixler* action as a result of inadequate representation.[7]

It is well-settled that under the doctrine of res judicata, "a judgment pursuant to a

class settlement can bar later claims based on the allegations underlying the claims in the

settled class action."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355,

---

[6] The District Court dismissed Gotthelf's claims without prejudice, and granted him leave to file an amended complaint.  When Gotthelf failed to file an amended complaint, the District Court ordered his claims dismissed with prejudice.

[7] Because Gotthelf opted out of the class settlement, he is not bound by the Settlement Agreement and therefore cannot collaterally attack it.

8

366 (3d Cir. 2001).  To be bound by a class settlement agreement under the principles of res judicata, however, the absent class member must have been afforded certain due process protections.  *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005).[8]  Generally, "'there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it.'"  *Id.* (quoting *Hansberry v. Lee*, 311 U.S. 32, 42 (1940)).  In a class action settlement where opt-out rights are given, due process requires:  (1) adequate representation by the class representatives, (2) notice of the class proceedings, and (3) the opportunity to be heard and to participate in the class proceedings.  *Id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)).  Therefore, if the settlement of the *Collado-Fixler* action comported with due process, res judicata will apply to bar Guedalia's and the putative class's claims.

An absent class member must have some mechanism by which to challenge whether his due process rights were upheld during a class action settlement.  *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1558 (3d Cir. 1994).  "This challenge can take the form of an appeal of the class certification itself, a collateral attack on an already-certified class, or a Rule 60(b) motion."  *In re Diet Drugs*, 431 F.3d at 145 (citing *In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 767 (3d Cir.

---

[8] The Parties do not dispute that all the elements of res judicata are met here, and Guedalia concedes that those elements are "not the important issue."  (Appellants' Br. 19.)  The contested issue is whether the procedures afforded to Guedalia and the putative class in the *Collado-Fixler* action comported with due process.

9

1989)).  Guedalia has chosen to collaterally attack the California District Court's class

certification and approval of the Settlement Agreement, rather than to pursue a direct

appeal.[9]

### 1.      *Notice and Opportunity to be Heard*

Guedalia does not, and cannot, challenge that class members were provided with

sufficient notice and had ample opportunity to be heard and to participate in the class

proceedings.  Guedalia clearly was apprised of the terms of the settlement, decided not to

opt out, and exercised his right to object to the class certification and Settlement

Agreement.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,

55 F.3d 768, 791 (3d Cir. 1995) (explaining that when simultaneous notice of the class

and the settlement is distributed to the proposed class, class members may object to both

the terms of the proposed settlement and the class certification itself).  Moreover, the

District Court considered his specific objections before approving the Settlement

Agreement.  Guedalia's only due process objection relates to the adequacy of

representation.  *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396 (1996)

(Ginsburg, J., concurring in part and dissenting in part) ("Final judgments, however,

---

[9] Guedalia could have appealed the California District Court's approval of the Settlement Agreement under *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002), which holds that an unnamed class member who timely objects to a settlement agreement has standing to appeal the approval of the settlement agreement.

10

remain vulnerable to collateral attack for failure to satisfy the adequate representation requirement.").[10]

> ### 2. Adequate Representation[11]

The adequate representation requirement in Rule 23 is designed to assure that courts "'evaluate [both] the named plaintiffs' and . . . counsel's ability to fairly and adequately represent class interests.'" *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors*, 55 F.3d at 799). Under Fed. R. Civ. P. 23(a)(4), the district court ensures that no conflict of interest exists between the named plaintiffs' claims and those asserted on behalf of the class, and inquires whether the named

---

[10] Because Guedalia received notice of the proceedings and failed to exercise an opportunity to "opt out," he consented to the jurisdiction of the California District Court, and is bound by the terms of the Settlement Agreement if he received adequate due process protections. *See In re Diet Drugs*, 431 F.3d at 146 (citing *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189 (3d Cir. 1993)).

[11] To the extent Guedalia's challenge could be read as asserting a constitutional right to effective or adequate counsel in a class action case, this claim is rejected. Supreme Court precedent firmly establishes there is no Due Process right to counsel unless the individual may be incarcerated as a result of the litigation. *See, e.g.*, *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981); *but see Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959 (2d Cir. 2009) ("An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class."). In fact, even when there is a possibility that a litigant may lose his liberty at the close of the proceeding, the "Due Process Clause does not *automatically* require the provision of counsel." *Turner v. Rogers*, 131 S. Ct. 2507, 2520 (2011) (emphasis in original). This is not inconsistent with our class action collateral attack jurisprudence, in which collateral challenges based on "adequacy" generally focus on the adequacy of the class plaintiffs, rather than class counsel. *See In re Diet Drugs*, 431 F.3d at 145 (due process satisfied by "adequate representation by the class representatives, notice of the class proceedings, and the opportunity to be heard and participate in the class proceedings"); *accord id.* at 147-49 (reviewing due process and adequate representation challenges based on intraclass conflicts).

plaintiffs have the ability and incentive to vigorously represent the interests of the class. *See id.*

"'Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) . . . those questions have, since 2003, been governed by Rule 23(g).'" *Id.* at 292 (quoting *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010)). Rule 23(g) lists several factors that district courts consider to determine whether class counsel can "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The list includes: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Guedalia has identified no "divergent or conflicting interests" between the named plaintiffs and the putative class. *In re Cmty. Bank*, 622 F.3d at 291. All plaintiffs and class members were owners or lessees of model years 2006-2009 Toyota Priuses who experienced the same malfunction with their HID headlamp system. Guedalia's claims of inadequate representation focus mainly on the adequacy of representation by class counsel and are two-fold. First, he argues that class counsel was deficient for failing to conduct adequate discovery before settling the *Collado-Fixler* action. Second, he argues that the "unfair, unreasonable, and inadequate" Settlement Agreement supports a claim of

12

inadequate representation, and demonstrates that the named plaintiffs and class counsel did not vigorously represent the interests of the class.

### a. Guedalia's Challenge to the Adequacy of Discovery

Guedalia's claim of inadequate representation for failure to conduct sufficient discovery fails because the issue was presented to, and resolved by, the California District Court. As we explained in *In re Diet Drugs*,

> No collateral review is available when class members have had a full and fair hearing and have generally had their procedural rights protected during the approval of the Settlement Agreement. Collateral review is only available when class members are raising an issue that was not properly considered by the District Court at an earlier stage in the litigation.

431 F.3d at 146. Guedalia raised the same issue regarding the adequacy of discovery in his objection to the Settlement Agreement. He argued that discovery in the *Collado-Fixler* action had only occurred for two months, was limited to discovery relating to class certification, and that therefore, any settlement was premature and inappropriate. In its Final Approval of Settlement, issued after the fairness hearing, the California District Court considered the arguments raised by the objectors and rejected them. The court explained:

> Some discovery has taken place, the parties have propounded and responded to interrogatories, and Plaintiffs' counsel appear to have a firm grasp on the strengths and weaknesses of the case. Given counsel's substantial experience with class action settlements and opinion that the settlement is in the best interest of the class, the Court likewise agrees.

(App. 596.) The California District Court also considered the costs of additional discovery and litigation, and determined that "[t]he potential costs of continuing the

13

lawsuit could greatly overshadow any judgment Plaintiffs may be able to recover."

(*Id.*)[12]  Because the extent of discovery conducted was "properly considered by the

District Court at an earlier stage in the litigation," we will not revisit that issue on

collateral review.  *See In re Diet Drugs*, 431 F.3d at 146.

> b.       *Guedalia's Challenge to the Fairness of the Settlement Agreement*

Guedalia also argues that the settlement was "[u]nfair, inadequate, and

unreasonable," which he claims is clear evidence that the named plaintiffs and class

counsel "failed to prosecute the action with due diligence and reasonable prudence."

(Appelants' Br. 31.)  Because Guedalia's challenge takes the form of a collateral attack,

our scope of review is more circumscribed than it would be on direct appeal.  The

California District Court's order approving the Settlement Agreement is now final and

unappealable, and therefore "[a]ny challenges to the [substance] of the [S]ettlement

[A]greement itself . . . are no longer timely."  *Orthopedic Bone Screw Prods. Liab. Litig.*,

350 F.3d 360, 363 (3d Cir. 2003).

Guedalia, under the guise of "adequate representation," is attempting to challenge

"the terms of [the] settlement agreement, itself," which "is clearly inappropriate as it is

---

[12] We considered a similar argument in *In re Prudential Insurance Co. America Sales Practices Litigation Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998).  There, an objecting plaintiff argued (albeit on direct appeal) that class counsel did not adequately represent the interests of the class for failing to take sufficient discovery before entering into a settlement agreement.  We found that class counsel adequately represented the class and determined that avoiding "expensive and time consuming discovery" was a factor that weighed in favor of settling.  *Id.* at 313, 318.

not a component of a due process challenge, appropriate for collateral attack." *In re Diet Drugs*, 431 F.3d at 146, 149. Had Guedalia wished to challenge the fairness, adequacy, and reasonableness of the Settlement Agreement, he could have appealed the *Collado-Fixler* action to the Ninth Circuit. He chose not to do so, and this Court is not the appropriate forum in which to litigate those claims.[13]

Guedalia has not identified a conflict of interest between the named plaintiffs and the rest of the class and has not demonstrated that class counsel was unable to adequately represent the interests of the class. He accordingly has not demonstrated a violation of the absent class members' due process rights, and he and the putative class are bound by the Settlement Agreement under the principles of res judicata.

---

[13] Guedalia's claim relating to the California District Court's failure to conduct a choice of law analysis also lacks merit. Choice of law is not one of the due process considerations we take into account on collateral review of a settlement agreement. *See In re Diet Drugs*, 431 F.3d at 145 (listing out the three factors — notice, opportunity to be heard, and adequate representation — courts analyze to determine whether absent plaintiffs received adequate due process). Moreover, in *In re Warfarin Sodium Antitrust Litigation*, we explained that although variations in state laws can present difficulties in certifying a *litigation* class under Rule 23(a), "those variations are irrelevant to [the] certification of a *settlement* class." 391 F.3d 516, 529 (3d Cir. 2004) (emphasis added). This is so because unless the differences in state laws are "so significant so as to defeat commonality and predominance," choice of law never becomes an issue in certifying a settlement class. *Id.* at 529-30. Guedalia has made no showing, and did not argue before the California District Court, that significant variations between California and New Jersey law defeated commonality and predominance.

## B.    Gotthelf's Individual Claims

Because Gotthelf opted out of the Settlement Agreement, he is not barred by res judicata from pursuing his individual claims for relief.[14]  Gotthelf brings four claims under New Jersey law: violations of the NJCFA, common law fraud, breach of express warranty, and breach of the implied covenant of good faith and fair dealing.  For substantially the same reasons provided by the District Court, we will affirm the dismissal of Gotthelf's claims.[15]

One crucial deficiency in Gotthelf's pleadings dooms all four of his claims: Gotthelf has not alleged any facts that demonstrate that Toyota had knowledge of, and intentionally concealed, the alleged defect in the HID headlamps, either before Gotthelf

---

[14] Because res judicata bars any claims brought on behalf of the putative class, we only consider Gotthelf's claims as to himself.  He has not asserted that he brings his claims on behalf of others who opted out of the Settlement Agreement.

[15] To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a motion to dismiss, we accept as true factual assertions in the complaint, but we disregard legal conclusions and conclusory statements. *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).  Moreover, under Rule 9(b), when a plaintiff is alleging fraud or mistake, he "must state with particularity the circumstances constituting fraud or mistake," though conditions of a person's mind, such as knowledge or intent, may be alleged generally.  Fed. R. Civ. P. 9(b).  When pleading knowledge, the complaint must still contain more than a "conclusory allegation," and the pleading must meet the "less rigid — though still operative — strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87.

16

leased his Prius, or prior to the expiration of Gotthelf's 3-year/36,000 mile warranty. As such, each of his claims fails.

1.    NJCFA

The New Jersey Consumer Fraud Act "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1114 (N.J. 2011). To constitute consumer fraud, "the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417, 430 (N.J. 1995). The elements of a NJCFA claim are: "(1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Gonzalez*, 25 A.3d at 1115. The statute defines an "unlawful practice" as:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression[,] or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived[,] or damaged thereby.

N.J. Stat. Ann. § 56:8-2. Gotthelf claims that the "unlawful practice" in which Toyota engaged was its knowing concealment of the defect in the HID headlamps. Gotthelf also claims that Toyota engaged in "an unconscionable commercial practice" by failing to disclose the defect in the HID headlamps to its customers once it became aware of the defect. Under each of these theories, however, Gotthelf is required to show that Toyota

17

"knowingly, with the intent of inducing reliance, conceal[ed], suppress[ed], or omitt[ed] a material fact." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013).

Gotthelf claims that Toyota knew of the HID headlamp defect "for years while Plaintiffs['] warranties were in full force and effect." (Appellants' Br. 48-49.) Nothing in the Complaint provides factual support for Toyota's alleged knowledge and concealment of the defect, either before Gotthelf leased his Prius, or during Gotthelf's warranty period. To the contrary, the facts demonstrate that once Toyota became aware of the defect during the NHTSA investigation, it initiated a Customer Support program to notify customers of the problem with the HID headlamps.

First, the Complaint alleges that Toyota should have been aware of the HID headlamp defect through its own "[b]ooks of [k]nowledge, internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints." (App. 86.) However, Gotthelf provides no factual support for this assertion — he does not state when the alleged complaints were received, or to whom at Toyota these alleged complaints were sent. Nor does he provide any facts relating to the alleged books of knowledge, internal testing, or dealership repair orders.[16] Such conclusory allegations are

---

[16] Gotthelf also claims that, as of September 2009, over 26,000 warranty claims had been submitted on the HID headlamps. However, it is not alleged in the Complaint when these warranty claims were filed, and at what point Toyota supposedly had knowledge of a widespread defect in the HID headlamps, such that it should have notified customers of the alleged defect.

18

insufficient to establish Toyota's knowledge, and concealment, of the HID headlamp defect. *See Iqbal*, 556 U.S. at 678-79

Second, Gotthelf relies on the complaints submitted to the NHTSA to establish Toyota's knowledge, and alleged concealment, of the defect. The Complaint includes several customer complaints filed with the NHTSA, the earliest of which dates to July 1, 2007. However, these complaints were filed with the NHTSA, not with Toyota, and the NHTSA did not notify Toyota of its investigation until May 6, 2009. Gotthelf has provided no facts to support his assertion that Toyota should have known about the defect based on these complaints. Based on the facts provided in the Complaint, May 6, 2009 is the earliest date that knowledge of the alleged defect can be attributed to Toyota. However, by this time, Gotthelf's warranty period had ended.

Third, the Customer Support letter in no way helps Gotthelf's argument that Toyota had knowledge of, and concealed, the defect. The Customer Support letter was sent after the expiration of Gotthelf's warranty period and informed customers of the problem with the HID headlamps. Gotthelf's assertions that the letter was sent in bad faith, or as a "cover up," lack factual support.

Because Gotthelf cannot demonstrate that Toyota engaged in "an unlawful practice" through its alleged omission or concealment of the HID headlamp defect, his NJCFA claim fails.[17]

---

[17] Gotthelf also spends a considerable amount of his brief arguing that the District Court erred by requiring that Toyota knew "with certainty" that the HID headlamps

## 2. Common Law Fraud

Gotthelf's common law fraud claim was properly dismissed for substantially the same reasons as his NJCFA claim. The elements of a common law fraud claim under New Jersey law are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). Because Gotthelf has not demonstrated that Toyota made any material misrepresentations or omissions of material fact, his claim fails.

## 3. Breach of Express Warranty

Gotthelf's breach of express warranty claim was also properly dismissed. The Unexpected Extinguishment occurred in Gotthelf's HID headlamps after the 3-year/36,000 mile warranty period had elapsed.

In New Jersey, "[a] breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered*." N.J. Stat. Ann. § 12A:2-725(2) (emphasis added). Therefore, if a warranty is a "future performance" warranty, "the cause of action accrues when the breach is or should have been discovered." *Poli v.*

_____

would fail. Because the Complaint has failed to plead facts to establish Toyota's knowledge during the relevant time period, we do not need to address whether the District Court erred by requiring a heightened standard.

20

*DaimlerChrysler Corp.*, 793 A.2d 104, 107 (N.J. Super. Ct. App. Div. 2002). In *Poli*, the court determined that a seven-year/70,000 mile powertrain warranty was a "future performance warranty." *Id.* at 108. The warranty at issue here, for three-years/36,000 miles, is substantially the same as the one in *Poli*, and falls within the "future performance exception" of N.J. Stat. Ann. § 12A:2-725(2). The cause of action did not accrue until the defect manifested itself. Therefore, for statute of limitations purposes, the breach of the warranty occurs when the defect manifests itself, not when the defect first "exists." There is no reason the same rule should not apply when deciding whether the defect was covered by the warranty.

New Jersey courts have intimated that plaintiffs can only recover for breach of warranty if the defects were discovered during the warranty period. *Cf. Comm'rs of Fire Dist. No. 9 v. Am. La France*, 424 A.2d 441, 572 (N.J. Super. Ct. App. Div. 1980) ("[I]f the warranty explicitly extended to future performance of the truck, the four-year limitations period did not begin to run until the breach — the paint defect — was or should have been discovered by the plaintiff, *provided the defect arose within the warranty period.*" (emphasis added)); *ACH Enters. 1. LLC v. Viking Yacht Co.*, 817 F. Supp. 2d 465, 470 (D.N.J. 2011) ("[T]the future performance exception found in N.J.S.A. § 12A:2-725(2) only applies if the defect is discovered during the warranty period."). Furthermore, this interpretation is consistent with the general rule of express warranties. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) ("[T]he general rule, from which we see no reason to deviate, is that an express warranty

21

does not cover repairs made after the applicable time has elapsed.  Thus, latent defects discovered after the term of the warranty are not actionable." (alterations, citations, and internal quotations marks omitted)).  Because Gotthelf alleges that the defect manifested itself outside the warranty period, he does not state a valid claim for breach of warranty.

*4.        Breach of the Implied Covenant of Good Faith and Fair Dealing*

Finally, Gotthelf has alleged no facts which show that Toyota breached the implied covenant of good faith and fair dealing.  Every contract in New Jersey contains an implied covenant of good faith and fair dealing.  *See Kalogeras v. 239 Broad Ave., L.L.C.*, 997 A.2d 943, 953 (N.J. 2010).  "The party claiming a breach of the covenant of good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shipping Cntr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (internal quotation marks omitted).  Gotthelf's warranty agreement with Toyota is a contract.  He claims that Toyota breached the covenant of good faith and fair dealing in the warranty contract by failing to provide him notice of the defect within the warranty period.  Because Gotthelf has not shown that Toyota had knowledge of the defect during Gotthelf's warranty period, this claim was properly dismissed.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's Order.

22